**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Quinton Dandre SCALES,
Defendant–Appellant.**

**No. 89–2057.**

United States Court of Appeals,
Tenth Circuit.

May 14, 1990.

Ann Steinmetz, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

---

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before SEYMOUR and McWILLIAMS Circuit Judges, and BRIMMER,* District Judge.

SEYMOUR, Circuit Judge.

Quinton Dandre Scales was convicted after a jury trial in federal district court of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988), and 21 U.S.C. § 841(b)(1)(B) (1988). On appeal, Scales challenges the district court's denial of his motion to suppress evidence of cocaine found in his suitcase and statements made in connection with the seizure of this physical evidence. Scales argues that the seizure of his suitcase without a warrant or without probable cause and exigent circumstances violated the Fourth Amendment. Because we agree, we reverse the judgment of the district court.

## I.

The seizure of Scales' luggage occurred on August 30, 1988. On that day, two special agents of the Drug Enforcement Agency (DEA), Kevin Small and Tim Brown, boarded an Amtrak train in Albuquerque, New Mexico to probe for narcotics-related activity.[1] The DEA agents spotted Scales, noticed that he was shaking and looking around the coach car, and eventually went up to him to ask him some questions.[2] One of these questions was whether Scales was carrying any narcotics, and Scales answered that he was not. DEA Special Agent Small testified that he then requested and received Scales' consent to search his small duffel bag.

When Small found nothing of interest in that bag, he asked about a larger suitcase

on the rack above Scales' head. Scales admitted that the suitcase was his, took it down, fumbled around nervously for the key, asked if the agents had a search warrant (they told him they did not), and then opened it up. In the suitcase there were two shoe-box sized packages and one larger package covered by plain brown wrapping paper and sealed with shiny brown tape. Such paper and tape, commonly available in stores, is often used by narcotics dealers to conceal the scent of the drugs or the contents of the box. See rec., vol. III, at 13; 58–59. Scales told the DEA agents that the boxes contained china for his mother, but Special Agent Small's suspicions were aroused by the light weight of the packages and the fact that nothing inside rattled when he shook it. Scales refused to allow Small to open the boxes, however. Small testified at the suppression hearing that he inquired whether Scales had ever been arrested for a narcotics violation, and that Scales told him he had only been arrested for a gun charge and for a robbery charge. Because the DEA agents felt they lacked probable cause to search the luggage or to arrest Scales, see id. at 49, they took no further action and left the train.

The DEA agents then drove to their Albuquerque office to check into Scales' criminal record and discovered that he had been arrested and sentenced in 1984 for possession of a controlled substance. With this information, the DEA agents decided to drive some 120 miles to the train's next stop, Las Vegas, New Mexico, and reboard it there. They reached Las Vegas at 4:15 p.m., forty-five minutes before the train. They got on the train when it arrived, told Scales they were taking his luggage, and handed him a receipt. They tried to disembark, but were unable to do so because the train had already begun moving. Small testified that he determined from Amtrak employees that it would be impossible to

---

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

1. This practice was not unusual: because of intelligence reports that transportation of drugs was becoming more common on Amtrak trains,

these two DEA agents entered trains some fifteen days per month.

2. Scales testified at the suppression hearing that he was the only young black person in his car, and that he was the only person Small and Brown talked to there. Rec., vol. II, at 82.

halt the train before its next scheduled stop. During a subsequent conversation with an Amtrak employee, Small learned that some problems with the plumbing had developed shortly after the train left Albuquerque, and that some Amtrak workers had discovered in a bathroom trash can two empty shoeboxes, newspaper, coffee grounds,[3] and brown wrapping paper with tape.[4]

The DEA agents left the train with the suitcase and the empty boxes at the next stop, Raton, New Mexico. They did not arrest Scales at that time because, as Small stated, "I couldn't arrest him for anything because ... he hadn't made a violation of the law 'cause I don't know what's in that bag." *Id.* at 25. Small and Brown got a ride from Raton to their car in Las Vegas from some New Mexico State Police officers, and then drove to the state penitentiary in Santa Fe. There they put the suitcase before the dog-sniffing team of "Junior" and "Decoy," and the dogs separately signaled that the bag contained a substance they had been trained to detect.[5] The dogs alerted to the suitcase between 11:30 p.m. and 12 midnight, some six and one-half to seven hours after the DEA agents had seized it.

After the positive reaction of the drug-sniffing dogs, the DEA agents drove back to Albuquerque, went with an affidavit the next evening to a United States Magistrate, and received a search warrant. Upon opening up the package inside the suitcase, the agents discovered approximately 2,109 grams of cocaine.

Scales filed a motion to suppress the physical evidence seized and all of his statements made on August 30, 1988. The district court, in making its ruling, initially noted that the DEA agents had reasonable

suspicion of criminal activity and therefore could detain the luggage briefly for further investigation. But the court went on to observe that

> "the actions of the officers in removing the luggage from the train and taking it to the ... [penitentiary for] a dog 'sniff' is troubling because of the length of the detention and the possibility of less intrusive alternatives."

Rec., vol. I, doc. 16, at 2. The court decided, however, that it "need not reach the issue of the possible illegality of this procedure" because it held that the good faith exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applied to ratify the agents' behavior. Rec., vol. I, doc. 16, at 2. The court also held that the alerting of the dogs to the luggage gave the DEA agents the requisite probable cause for a search warrant.

## II.

■ The good faith exception to the exclusionary rule, as set out in *Leon,* provides that where police officers act in reasonable reliance on a search warrant, issued by a detached and neutral magistrate but ultimately found to be defective, the evidence so obtained should not be excluded. 468 U.S. at 922, 104 S.Ct. at 3420. The rationale for this rule addresses the deterrent effect the exclusionary rule has both on judges and magistrates, and on law enforcement officers. The Court observed that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916, 104 S.Ct. at 3417. The Court also concluded that there is no evidence suggesting that judges and magistrates are inclined to evade the Fourth Amendment, and that it could "discern no basis

---

**3.** One agent testified that coffee grounds are used by narcotics traffickers to disguise the odor of drugs from dogs trained to alert to such substances. Rec., vol. IV, at 43–44.

**4.** According to testimony by Small, disputed by Scales, the DEA agent then confronted Scales and got him to admit to flushing some "brown colorey powder" contained in the two boxes down the toilet. *Compare* rec., vol. III, at 22–23 *with* rec., vol. II, at 58–59. Small did not refer

to this "admission" or to anything being flushed down the toilet in the DEA report he filed, rec., vol. III, at 77–79, nor in the affidavit he prepared for the search warrant, *id.* at 79, nor in his grand jury testimony, rec., vol. V, at 20–22. Scales also allegedly stated that the third box was "'a decoy box to throw off the dogs.'" Rec., vol. III, at 23.

**5.** These dogs are trained to "alert," or signal, to narcotics, green money, and explosives.

... for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." Id. Finally, *Leon* reasoned that where an officer has acted in good faith pursuant to a warrant, "there is [in most cases] no police illegality and thus nothing to deter.... Penalizing the officer for the magistrate's error, rather than his [or her] own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 920–21, 104 S.Ct. at 3419.

The specific holding of *Leon* does not apply to the facts of this case, nor is the rationale behind it present here. When the DEA agents seized the suitcase and held it for more than twenty-four hours before obtaining a search warrant, they were not acting pursuant to a warrant subsequently deemed invalid. The "illegality" which arguably existed here was not a function of the agents' good faith reliance on a presumptively valid warrant. Moreover, the search of the suitcase *after* the search warrant was issued does not prevent us from evaluating the agents' behavior *prior* to that time.

As the Ninth Circuit has observed, the "Supreme Court has applied the so-called 'good faith' exception to the exclusionary rule only to searches conducted in good faith reliance on a warrant or a statute later declared to be unconstitutional." *United States v. Winsor,* 846 F.2d 1569, 1579 (9th Cir.1988) (en banc) (citation omitted). *See also* 1 W. LaFave, *Search and Seizure* § 1.3(g), at 78 (2d ed. 1987) ("The reasoning which was critical to the [decision in *Leon* ]—especially that in with-warrant cases there is no need to deter the magistrate and usually no need to discourage the executing officer from relying upon the magistrate's judgment and actions—does not carry over to the without

warrant situation."). We too decline to extend the holding of *Leon* to cases in which the good faith of the officer cannot be presumptively established by the existence of a search warrant valid on its face. Because the DEA agents were not acting in reliance on a search warrant when they seized the luggage and held it for more than twenty-four hours, *Leon* does not ratify their actions. We therefore must analyze those actions according to the dictates of Fourth Amendment law.

## III.

■ Absent a search warrant or probable cause and exigent circumstances, law enforcement authorities with reasonable suspicion that a piece of luggage contains narcotics may "detain the luggage *briefly* to investigate the circumstances that aroused [the] suspicion, provided that the investigative detention is properly limited in scope." *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (emphasis added).

In *Place,* the Supreme Court held that subjecting luggage to a "canine sniff" does not "constitute a 'search' within the meaning of the Fourth Amendment" because both the manner of obtaining information and the information actually obtained are so limited. *Id.* at 707, 103 S.Ct. at 2644; *see also United States v. Goldstein,* 635 F.2d 356, 361 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981). The taking of the defendant's luggage to subject it to the canine sniff in *Place* did, however, amount to a seizure governed by the Fourth Amendment. *See* 462 U.S. at 707–09, 103 S.Ct. at 2644–46. The Court therefore analyzed the seizure under the brief investigative detention standard.[6]

---

**6.** This standard for luggage is comparable to the *Place* Court's interpretation of the standard governing investigative stops of a person. *See United States v. Place,* 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983) (police may make a forcible stop of a person if there is reasonable suspicion that criminal activity is afoot), interpreting *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court applied *Terry* because it reasoned that

"in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary.... [S]uch a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return."

*Place* involved the seizure of a suspect's luggage when he arrived from Miami at La Guardia Airport in New York. Two DEA agents took Place's bags, told him they were taking them to a federal judge to try to get a search warrant, handed him a slip with the phone number of one of the agents when he declined to accompany them, and then drove the bags to Kennedy Airport to subject the bags to a sniff test by a dog trained in narcotics detection. The Court listed two factors relevant to its assessment of whether the DEA agents' conduct exceeded the permissible length of a brief investigative detention. First, "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *Id.* at 709, 103 S.Ct. at 2645. Second, a court must consider how diligently the police pursued their investigation. *Id.*

■ In *Place*, the suspect's luggage was seized for ninety minutes before the dog sniff established probable cause. The Court held that the length of time *alone* precluded a determination that the seizure was reasonable without probable cause. *Id.; see also United States v. Cagle,* 849 F.2d 924, 927 (5th Cir.1988) (ninety minute detention, along with the availability of less intrusive investigatory techniques, rendered seizure sufficiently intrusive); *Moya v. United States,* 761 F.2d 322, 327 (7th Cir.1984) (three hour seizure of shoulder bag unreasonable); *United States v. Puglisi,* 723 F.2d 779, 790–91 (11th Cir.1984) (140

minute detention of luggage rendered the seizure unreasonable, especially since less intrusive alternatives existed). The seven hour delay in the present case clearly goes beyond the "brevity" required for a *Place* seizure.[7] Moreover, in examining whether the DEA agents "could have minimized the intrusion on [Scales'] Fourth Amendment interests," *Place,* 462 U.S. at 709, 103 S.Ct. at 2645, we note that unexplored alternatives to the course of action did exist. For example, the DEA agents did not telephone the dogs' handler to inquire whether the dogs could be brought to the train station.[8]

In addition, as in *Place,* the intrusion here "was exacerbated by the failure of the agents to accurately inform [Scales] of the place to which they were transporting the luggage, of the length of time he might be dispossessed, and of what arrangements would be made for return of the luggage if the investigation dispelled the suspicion." *Id.* at 710, 103 S.Ct. at 2646. All Agent Small did was to give Scales a receipt which contained Agent Small's name, agency, phone number, the date, Quinton Scales' name, and the case number. *See* rec., vol. III, at 18; vol. IV, at 39. We conclude under *Place* that the seizure of Scales' suitcase exceeded the DEA agents' narrow authority to detain the suitcase briefly for investigative purposes.

### IV.

■ The district court found after a suppression hearing that the DEA agents "ac-

---

*Place,* 462 U.S. at 708, 103 S.Ct. at 2645.

7. The Government cites to two cases, *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), and *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), in which the duration of a seizure far exceeded the length of time here. *Segura* and *Van Leeuwen* are inapposite to this case. In *Segura,* the police seized the contents of an apartment for 19 hours before obtaining a warrant, but their seizure was based upon probable cause, not reasonable suspicion as in *Place* and here. *Segura,* 468 U.S. at 813 n. 8, 104 S.Ct. at 3390 n. 8. In *Van Leeuwen,* the item seized for 26–½ hours before a warrant was obtained was a *package,* not the personal luggage of a traveler, and therefore did not give rise to the posses-

sory and liberty interests underlying *Place. See* note 6, *supra.*

8. Even though the standard procedure of DEA agents is to bring the drug-sniffing dogs to the airport or train station being surveilled, *see* rec., vol. III at 101–02; vol. IV, at 26–27, the DEA agents here did not attempt to have dogs made available either in Albuquerque or Las Vegas:
   "Q: Could you have called the Canine Unit while you were on the train in Albuquerque?
   A: We could've probably tried, yes.
   . . . .
   Q: No attempt was made to contact them before the piece of luggage was taken off the train in Las Vegas; is that true?
   A: That's true."
   *Id.; see also* rec., vol. V, at 26–27.

quired probable cause ... when the dogs 'alerted' to the luggage." Rec., vol. I, doc. 16, at 2. The Government now contends for the first time that although the agents may only have had reasonable suspicion of criminal activity when they initially seized Scales' suitcase, their discovery of the two empty boxes in the bathroom trash can and Scales' admission that he flushed the contents down the toilet created probable cause at that time to seize the luggage. Not only did the Government not make this argument below, it argued to the district court that the dog sniff established probable cause, and it agreed with the court that the facts prior to the dog sniff gave rise only to a reasonable suspicion of criminal activity. *See* rec., vol. II, at 38–39. Furthermore, as we have already noted, Agent Small referred neither to the items flushed down the toilet, nor to Scales' alleged "admission" in either the DEA report, the search warrant affidavit, or his grand jury testimony. The district court made no findings to support a conclusion of probable cause prior to the drug dogs' alerting on the luggage. Because the Government did not raise below whether probable cause existed at the earlier time, it is precluded from arguing that issue here. *See United States v. Maez*, 872 F.2d 1444, 1452–53 (10th Cir.1989) (Government lost right to assert on appeal the existence of exigent circumstances by failing to argue the issue below).

We conclude that the district court erred in denying Scales' motion to suppress. The judgment of conviction is VACATED and the case is REMANDED to the district court for further proceedings consistent with this opinion.