**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael MOORE, Defendant–Appellant.**

**No. 92–2272.**

United States Court of Appeals,
Tenth Circuit.

April 18, 1994.

Thomas B. Jameson, Albuquerque, NM, for defendant-appellant.

David N. Williams, Senior Litigation Counsel (Don J. Svet, U.S. Atty., with him on the brief), Albuquerque, NM, for appellee.

Before LOGAN, ANDERSON, and TACHA, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Defendant Michael Moore entered a conditional guilty plea to charges of possession with intent to distribute cocaine and aiding and abetting such possession, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2. He now appeals the district court's denial of his motion to suppress evidence seized from his luggage following an encounter with Drug Enforcement Agency (DEA) officers aboard a train stopped in Albuquerque, New Mexico. We affirm.

## BACKGROUND

Moore was aboard the Amtrak train which stopped in Albuquerque, New Mexico, where DEA officers regularly conduct surveillance of train passengers. Detective Samuel M. Candelaria was told by a train attendant that three people had boarded the train in San Bernardino, California, and had purchased their tickets with cash from the conductor, thereby presumably paying a penalty for buying tickets on board rather than at the station. The attendant also told Candelaria that two of the individuals carried a tan duffle bag with them at all times. DEA Agent Kevin Small met with Candelaria, and told Candelaria that another train attendant had told Small about the two men with the tan duffle bag.

Candelaria and Small watched as two of the individuals, later identified as Jerry Wilson and defendant Moore, got off the train, reboarded the train and entered the dining car, exited the train again, and finally reboarded the train and sat down in the coach car. Candelaria approached their seats, identified himself as a police officer and asked permission to speak to them. Candelaria noticed the tan duffle bag at Moore's feet. Both Wilson and Moore immediately stood up, and Moore announced he was going to the rest room.

In Moore's absence Candelaria talked with Wilson, who told him that he (Wilson) and Moore were going to Chicago, that they had boarded the train in Los Angeles along with a third person, and that they had been in Los Angeles on vacation.[1] On request, Wilson showed Candelaria his ticket, which showed that three people were travelling on the ticket and that they had boarded the train in San Bernardino. The back of the ticket contained a statement that the fare is higher when paid on the train if the ticket office was open at the time the purchaser boarded the train.

Candelaria asked and received permission to search a suit bag Wilson said was his, and which contained no contraband. When asked about the tan duffle bag, Wilson responded that it belonged to Moore. Candelaria then went to look for Moore, whom he encountered coming out of a rest room. Moore consented to talk with Candelaria, and told the detective that he was traveling from Los Angeles to Chicago. When they returned to Moore's seat, Moore gave permission for Candelaria to search his brown suit bag, but specifically refused consent to search the tan duffle bag.

At that point, Candelaria told Moore he would seize the bag, that Moore was not under arrest, and that the bag would be sent by Federal Express to Chicago, where it would arrive before the train did, if it contained nothing incriminating. Candelaria and Small took the bag off the train in order to subject it to a dog sniff. Because there was no trained narcotics dog at the train station, the agents drove approximately five minutes to a security location where a dog

---

1. Candelaria testified in the hearing on Moore's motion to suppress that both Moore and Wilson "hesitated" when Candelaria asked them where they had boarded the train. They then responded that they had boarded in Los Angeles. R. Vol. III, Tr. of Mo. Hr'g at 23, 31.

was present.[2]  When the dog alerted to the bag, the officers obtained a search warrant from a magistrate judge and searched the bag, where they found two kilograms of cocaine.

After his indictment, Moore filed a motion to suppress the cocaine found in his bag. The district court denied the motion, holding that there were articulable facts giving rise to a reasonable suspicion that the bag was implicated in criminal activity.  Moore appeals the denial, arguing that the facts do not give rise to the reasonable suspicion necessary to justify a seizure of the duffle bag.

### DISCUSSION

We review under the clearly erroneous standard the district court's factual findings supporting its denial of the motion to suppress on the ground that reasonable suspicion existed to seize the bag.  *United States v. Little*, 18 F.3d 1499, 1502–03 (10th Cir.1994) (en banc); *United States v. Hall*, 978 F.2d 616, 619 (10th Cir.1992).  We review de novo the ultimate determination of reasonableness under the Fourth Amendment.  *Little*, 18 F.3d at 1502–03; *United States v. Allen*, 986 F.2d 1354, 1356 (10th Cir.1993).  The proponent of a motion to suppress bears the burden of proof.  *Rakas v. Illinois*, 439 U.S. 128, 130–31 n. 1, 99 S.Ct. 421, 423–24, 58 L.Ed.2d 387 (1978); *United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir.1991).

2.  Vice President Dan Quayle was visiting Albuquerque at the time, and the dog was assigned to a security detail at the University of New Mexico.

3.  Indeed, at oral argument, which was recorded, in response to direct questions, Moore's counsel stated that the only issue in the case was whether reasonable suspicion supported seizure of the bag.  He affirmatively stated that the propriety of the length of the detention of Moore's bag was "not the issue in this case ... [which is] limited to whether the seizure was based on reasonable suspicion."  He further conceded, in response to a direct question, that he had "not clearly raised the issue below."  We will not address issues raised for the first time on appeal, on which no adequate record was created below.  *See In re Lynde*, 922 F.2d 1448, 1455 (10th Cir.1991). There is even less justification for addressing an issue which is not raised at all on appeal, and is in fact affirmatively disclaimed as being an issue on appeal.

Moore raises a single issue in this appeal—whether the district court erred in holding that reasonable suspicion justified the seizure of Moore's tan duffle bag.[3]  "Law enforcement officers may seize and briefly detain a traveler's luggage provided that the officers have reasonable articulable suspicion that the luggage contains narcotics."  *Hall*, 978 F.2d at 620 (citing *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983)).  In determining whether reasonable suspicion exists, we consider the totality of the circumstances to see if the officers have a "minimal level of objective justification," something more than an "inchoate and unparticularized suspicion or hunch."  *Id.; see also United States v. Bloom*, 975 F.2d 1447, 1456 (10th Cir.1992) (quoting *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989)), *explained, Little*, 18 F.3d 1499.  The officers are permitted, however, to "draw[ ] inferences and make[ ] deductions ... that might well elude an untrained person."  *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

The district court made the following findings in support of its conclusion that reasonable suspicion existed: the tickets were paid for in cash and aboard the train "where a penalty factor was involved in the purchase price" and Moore had lied about where he had boarded the train and the officers knew that he had lied.  R. Vol. III, Tr. of Mo. Hr'g

The dissent strains to reach this issue which was neither argued nor briefed below, and on which the district court made no findings.  Despite the dissent's assertion that it is "irrefutable" that the officers lacked probable cause before the train left the station, there is in fact *no* finding on that point, or on precisely when probable cause was established, or when the train left the station, or whether Moore was inconvenienced by not having access to his bag on the ride to Chicago, or on the myriad other facts relevant to this issue.  There will certainly be a case in which this issue will be squarely presented, with findings and an adequate record below and fully briefed arguments both at the district court level and on appeal.  This is no such case.  We therefore expressly disavow the dissent's discussion of this issue, based as it is on "findings"—more accurately, inferences and assumptions—made on appeal by the dissent itself, and on a legal analysis with which we do not agree.

at 66.[4] Moore has not convinced us that those findings are clearly erroneous. They adequately support the district court's conclusion that the officers had reasonable suspicion to briefly detain Moore's luggage and subject it to a dog sniff. *See United States v. Ward,* 961 F.2d 1526, 1530 (10th Cir.1992) (reasonable suspicion arose once officers learned defendant was traveling under an alias and had lied about the amount of luggage he was carrying), *explained, Little,* 18 F.3d 1499.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

LOGAN, Circuit Judge, dissenting.

I would reverse on two independent grounds: There was no reasonable suspicion to justify seizure of defendant's duffle bag after he denied consent to its search; and probable cause was required to hold defendant's bag for a period extending beyond the train's departure, and no such probable cause existed here.

I

The majority states the facts the district court found to support "reasonable suspicion": "[T]he tickets were paid for in cash and aboard the train 'where a penalty factor was involved in the purchase price' and [defendant] had lied about where he had boarded the train and the officers knew that he had lied." Maj. op. at 243. I cannot agree that these circumstances provide an objective basis for suspecting defendant of criminal activity.

First, paying in cash may have been defendant's only option; Amtrak does not accept personal checks and not all individuals have access to a credit card. Further, the penalty for paying cash applies only if the ticket office where defendant boarded the train was open at the time. Detective Candelaria admitted that he only assumed defendant paid

a penalty; he did not verify that fact. III R. 51–52. Even if true I see nothing particularly suspicious in that act; defendant and his friends may have reached the station too late to purchase tickets before departure or they may have thought the penalty too small to make it worthwhile to stand in a ticket line. The statement about their origination point, even if categorized as a "lie," is reasonably interpreted as merely a reference to the general area from which defendant and his companions were coming, and in any event does not raise any suspicion of illegal conduct. Given the government's position in other cases, it seems that an admission that they were coming from Los Angeles would generate more suspicion than would a reference to San Bernardino.

In several recent train cases we have held, on more egregious facts than these, that there was no reasonable suspicion as a matter of law. In *United States v. Hall,* 978 F.2d 616 (10th Cir.1992), the officers knew that the defendant:

(1) boarded the train in Flagstaff rather than in her hometown of Reno, (2) was traveling under her real name, from Arizona to Harrisburg, (3) was traveling alone in a private compartment, (4) had paid cash for a one-way ticket, (5) had provided a callback number of a California travel agency, (6) was traveling with a suitcase that was "very heavy," and (7) appeared nervous when approached by the officers.

*Id.* at 621. We concluded that "none of the factors in this case, except Defendant's nervousness, are objectively suspicious. Instead, these factors are entirely consistent with innocent travel and therefore raise only a minimal degree of suspicion." *Id.*

In *United States v. Bloom,* 975 F.2d 1447 (10th Cir.1992), the defendant was traveling alone from Arizona to New York, had paid cash for a one-way ticket shortly before departure, kept his "high quality" luggage with him in his private compartment, and, when

---

**4.** Moore attempts to argue on appeal that he did not really lie about his embarkation point, because San Bernardino is "practically a suburb of Los Angeles, lying only sixty-five miles east of the city." Appellant's Br. at 10. The district court concluded that Moore lied, and we find no clear error in that conclusion.

The dissent persistently ignores the fact that the district court *specifically found* that Moore lied, and the dissent makes no attempt to explain why that finding is clearly erroneous. No matter how the dissent attempts to characterize it, lying to an officer is *not* consistent with innocent travel.

he saw the agents looking around the train, asked one of the train attendants what was going on. We reasoned that testimony by the agent that the defendant's luggage "was of a type commonly used by drug traffickers is afforded little weight in our analysis." *Id.* at 1458. Similarly, we held that the defendant's inquiry to the attendant was not suspicious. "Curiosity concerning the presence of an armed law enforcement officer roaming about a form of public transportation is not inconsistent with innocent behavior." *Id.* We determined that the other factors the officers relied upon were "wholly consistent with innocent travel," *id.*, and therefore reversed the district court's finding of reasonable suspicion.

In *United States v. Ward,* 961 F.2d 1526 (10th Cir.1992), the agents learned from an Amtrak informant that

a Mr. Leon had paid $600 in cash, which he pulled out of his boot, for a one-way ticket from Flagstaff to Kansas City, Missouri. Mr. Leon reportedly had given a telephone number with a Tucson prefix at the time he had made the reservation. The reservation was for the largest private room on the train, which accommodated up to six people and was known as a family room. Mr. Leon had said that his family could not accompany him on the trip but he would use the room himself. When the officers had contacted the train conductor, asking him if he had seen anyone out of the ordinary, the train conductor told the officers that a Mr. Leon had moved from a large family room to a small roomette.

*Id.* at 1529. We held that "the information the officers had on Mr. Leon at this point, when the questioning began, was consistent with innocent travel," and that "no court could have found 'reasonable suspicion' for an investigative detention at this point." *Id.* Only after the officers learned that the defendant was traveling under an alias and had lied about the amount of luggage he was carrying did reasonable suspicion arise. *Id.* at 1530.

The latest Supreme Court case to consider the quantum of information necessary to establish reasonable suspicion is *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Sokolow,* the officers knew the following about the defendant:

(1) he paid $2,100 for two airplane tickets from a roll of $20 bills; (2) he traveled under a name that did not match the name under which his telephone number was listed; (3) his original destination was Miami, a source city for illicit drugs; (4) he stayed in Miami for only 48 hours, even though a round-trip flight from Honolulu to Miami takes 20 hours; (5) he appeared nervous during his trip; and (6) he checked none of his luggage.

*Id.* at 3, 109 S.Ct. at 1583. The Court refused to adopt a rigid formula for determining the presence of reasonable suspicion, stating that "[t]he concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 7, 109 S.Ct. at 1585 (quotation omitted). Rather, "[i]n evaluating the validity of a stop such as this, we must consider the totality of the circumstances—the whole picture." *Id.* at 8, 109 S.Ct. at 1585–86 (quotation omitted). The Court concluded that "[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion." *Id.* at 9, 109 S.Ct. at 1586.

The facts in the instant case are much more analogous to those in *Hall, Bloom,* and *Ward* than those in *Sokolow.*[1] Even though factors that are individually consistent with innocent travel may in the aggregate indicate suspicious activity, they do not do so here. Based on the record, the facts as known to Detective Candelaria at the time he seized the bag did not give rise to an objectively reasonable suspicion of criminal activity.

I suspect that an unarticulated drug dealer-courier profile underlies this case, the train personnel's identification of defendant, the DEA agents' questioning, and even the courts' approval of the seizure of defendant's luggage. Defendant is a black man, who was

---

**1.** Although *Bloom* and *Ward* have been overruled in other respects by our recent in banc opinion, *United States v. Little,* 18 F.3d 1499 (10th Cir. 1994), they remain as pronouncements of the law in this circuit on the reasonable suspicion issue.

twenty-seven years old at the time. Probably his traveling companions also were black and young. Perhaps they were wearing clothing or jewelry that suggested they were more affluent than typical black men their age; perhaps they displayed arrogance, secretiveness, or other behavior that set them off from other passengers in some way that suggested criminal activities. If so, nothing of this is in the record, except no doubt the district judge knew defendant was a young black man.

The government asks that we rely upon the expertise of experienced lawmen and the alleged infallibility of unidentified train personnel. But such reliance gives unreviewable discretion to law officers; the only cases that get to the courts are those in which the officers find contraband. We must deal with the facts shown in the record. Our words based upon those record facts become the law. Our words enunciate the constitutional standards that guide and confine the district courts and the police. As I read the majority opinion any three ordinary-looking retirees who board a train in a suburb but identify their origination as the city and who pay cash for their tickets on board, can have their luggage seized against their will for a dog sniff. I am unwilling to rely upon the tacit assumption that such a thing will not happen to you or me, our innocent children, or people like us—that only the guilty are accused. Based on the record before us, I would conclude that defendant's bag was illegally seized, and any evidence discovered therein should be suppressed.

## II

The majority refuses to consider the issue of the propriety of the length of time the baggage was detained, on the ground that defendant's counsel said at oral argument that it was not an issue and had not been clearly raised in the district court. It is true that defense counsel based his appellate briefing and argument on reasonable suspicion, and said we need not reach the question of the length of the bag's detention because there was no reasonable suspicion. Counsel did say, in response to my question, that he did not waive the length of detention issue but thought he had not clearly raised it in the district court.[2] I do not understand why on appeal counsel placed all his eggs in the "reasonable suspicion" basket.[3] In my view, the length of detention issue would require suppression of the evidence regardless of the merits of the reasonable suspicion issue. The record is sufficiently clear on this issue to justify our consideration. We may consider even an issue not raised in the trial court if it presents a question of law not requiring further development of the record and if consideration is necessary to prevent manifest injustice. See United States v. Strahl, 958 F.2d 980, 983 (10th Cir.1992); United States v. Cheama, 783 F.2d 165, 168 (10th Cir.1986); Harris v. Day, 649 F.2d 755, 761 (10th Cir.1981). Manifest injustice has more than one face. Viewed as a criminal engaged in major drug dealing, defendant is not the victim of injustice; viewed, however, as a victim of unconstitutional police behavior he is. Here I think he has a valid constitutional claim that properly presented to the court would free him from a sentence of five years in prison. I think we have a duty to treat the issue.

The majority emphasizes that there is no fact finding in the district court on whether

---

**2.** I think it was raised adequately, though not well, in the district court. At the suppression hearing defense counsel said, "Judge, I don't disagree with Mr. Williams on what we're dealing with here today. Basically this case is governed, from my point of view, by the principles set out by the Supreme Court in U.S. v. Place [462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)]." III R. 9. After focusing on the reasonable suspicion requirements discussed in Place, defense counsel further stated to the district court, "The Place case also says once the seizure is made the intrusion on the seizure of personal property has to be of a minimal nature. I believe that's still part of the Government's burden in this case...." Id. 490 U.S. at 9–10, 109 S.Ct. at 1586–87.

**3.** The only reference in defendant's appellate brief that can be read to raise the length of detention argument is the citation to Place with the following language: "When police seize luggage from a suspect's custody, the limitations applicable to investigative detentions of the person define the permissible scope of an investigative detention of the person's luggage on less than probable cause." Appellant's Br. at 13 (citing Place).

the officers had probable cause before the train left the station, and no finding as to when the train left or whether defendant was "inconvenienced by not having access to his bag." Maj. op. at 243 n. 3. As to when the train left the station Detective Candelaria admitted that he advised defendant "that if he chose to stay with the bag that he would miss the train which was getting ready to depart." III R. 36. Candelaria also testified that it was only ten minutes from the time he first contacted defendant "until the time the train pulled out," and that the train actually pulled out at "1:50." *Id.* at 56. The government's response to defendant's motion to suppress stated that "Candelaria wrote his name and address on a business card and seized the bag and [sic, apparently "at"] 1:50. [Defendant] continued on his journey uninterrupted." I R. doc. 29 at 5. The presentence report states that agents advised defendant that they were going to seize the bag, subject it to a dog sniff, and if the dog did not alert the bag "would be returned to him the next day." II R. 3 at ¶ 9. That report indicates defendant was arrested when the train arrived in Raton, New Mexico. *Id.* at 4 ¶ 12.

The facts are undisputed that the train left the station almost immediately after the seizure, and that is the only fact necessary to decide the "length of detention" issue. The officers cannot use information obtained after the train left to find retroactive probable cause at the earlier time. And certainly if there was no reasonable suspicion to seize the bag, as I believe, a fortiori, there could be no probable cause. I cannot believe even the majority could find probable cause, if required for the seizure, on the facts of this case.

There is no dispute that defendant's duffle bag was "seized" by Detective Candelaria. *See Hall,* 978 F.2d at 619 ("Tangible property is seized when a police officer exercises control over the property by removing it from an individual's possession, or when an officer informs an individual that he is going

to take his property.") (citation omitted). Ordinarily, a seizure of property requires probable cause. *See United States v. Dimick,* 990 F.2d 1164 (10th Cir.1993) (search of train compartment and seizure of luggage found there for dog sniff), *overruled on other grounds by United States v. Little,* 18 F.3d 1499. However, the Supreme Court has carved out an exception to the probable cause requirement for seizures that are "minimally intrusive of the individual's Fourth Amendment interests." *Place,* 462 U.S. at 703, 103 S.Ct. at 2642. If "strong countervailing governmental interests" are present, a brief seizure of property may be permitted on the basis of reasonable suspicion, rather than probable cause. *Id.* at 706, 103 S.Ct. at 2644; *Hall,* 978 F.2d at 620. The permissibility of such an investigative detention normally depends on the length of the detention and the diligence of the police in pursuing the investigation. *See Place,* 462 U.S. at 709, 103 S.Ct. at 2645–46; *United States v. Scales,* 903 F.2d 765, 769 (10th Cir.1990). The length of detention is generally measured from the time of seizure to the time probable cause is established. But this simple time calculation is not indicative of the intrusiveness of the seizure in every case.

*Place* instructs reviewing courts to examine "the brevity of the invasion of the individual's Fourth Amendment interests," 462 U.S. at 709, 103 S.Ct. at 2645–46, and thus the proper focus is on the effect of the seizure on the traveler. If the traveler remains with the luggage, the best measure of the invasion of his possessory interest is the elapsed time between seizure and the probable cause determination. However, if the traveler's itinerary forces him to either miss his connection or abandon his bag, and he chooses to leave without his luggage, a determination of the additional time necessary to establish probable cause becomes irrelevant from the traveler's perspective. The traveler now has been deprived of his possessory interest in the bag for at least a number of hours, if not days.[4] Because the traveler expected to have access to the bag throughout his trip, and may have planned accordingly, such a

---

4. The Eleventh Circuit noted this problem in the context of checked baggage removed from a flight: "We suspect ... that, at the time the bags were first seized, the length of time the passenger

could be expected to be dispossessed of luggage under these circumstances would be hours and that this seizure would inherently be more than minimally disruptive." *United States v. Cooper,*

seizure is more than a minimal intrusion upon his possessory interest in the bag. *See United States v. Puglisi,* 723 F.2d 779, 790 (11th Cir.1984) ("The impairing of an air traveller's reasonable possessory interest in his luggage is especially intrusive when the seizure causes him to depart without his luggage or miss his flight."). "Particularly in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary." *Place,* 462 U.S. at 708, 103 S.Ct. at 2645. Although *Place* draws no bright line permitting any particular type of seizure on less than probable cause and barring others, it holds "the [ninety-minute] length of the detention of respondent's luggage *alone* precludes the conclusion that the seizure was reasonable in the absence of probable cause." *Id.* at 709, 103 S.Ct. at 2645 (emphasis added).

In the instant case, the fact that defendant was permitted to continue with his trip mitigates the effect of the intrusion on his liberty, but exacerbates the intrusion on his possessory interest in the bag. Therefore, in the context of luggage accessible to a passenger on public transportation, surely we should hold that its seizure under circumstances that require the traveler to abandon his luggage to continue with his itinerary exceeds the permissible detention authorized by *Place,* and must be supported by probable cause.[5]

This is the view of the other circuits that have considered analogous detentions. Very recently the Ninth Circuit, in *United States v. Morgan,* 16 F.3d 1051, 1060 (9th Cir.1994), stated:

> Even if government agents were perfectly diligent, then, a seizure without probable cause could still last too long to pass muster under the Fourth Amendment. For example, if an unforeseeable canine virus suddenly afflicted all of the drug-sniffing dogs in Hawaii, leaving them out of com-

mission for a 24–hour period, government agents in Hawaii would not be justified in detaining a traveller's bags for the entire period on a mere reasonable suspicion. Regardless of the government's good faith and exercise of due care, the Fourth Amendment would not allow such an extensive impingement of the traveller's liberty without probable cause.

*See also Scales,* 903 F.2d at 769 (seven-hour luggage detention not within *Place's* "briefly" requirement); *United States v. Cagle,* 849 F.2d 924, 927 (5th Cir.1988) (ninety-minute detention unreasonable); *Moya v. United States,* 761 F.2d 322, 327 (7th Cir.1985) (three-hour detention of shoulder bag unreasonable); *Puglisi,* 723 F.2d at 790 (140–minute detention unreasonable).

It is irrefutable that the officers did not have probable cause at the moment of seizure or before the train left the station. Therefore, because the detention of defendant's bag exceeded the permissible scope of a *Place* seizure, the district court erred in failing to suppress the contents of the duffel bag.

For the foregoing reasons I dissent.

---

873 F.2d 269, 275 n. 5 (11th Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989).

**5.** The instant case is to be distinguished from seizures from pedestrians or persons in private automobiles who have control over the schedule of their transportation. In such situations, the elapsed time from seizure to probable cause determination remains the most relevant factor.