77 F.3d 493
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Edward HAVENER, Defendant-Appellant.
 No. 95-8020.
 D.C. No. 94-CR-0082-D.
 United States Court of Appeals, Tenth Circuit.
 Feb. 21, 1996.
 
 ORDER AND JUDGMENT[1]
 Before BALDOCK, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and REAVLEY, Senior Circuit Judge.[2]
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 After his motion to suppress was denied, Ronald Edward Havener, with the approval of the court and the consent of the government, entered a conditional plea of guilty to two counts of a 5-count indictment, reserving the right to have reviewed on appeal the district court's denial of his motion to suppress. Fed.R.Crim.P. 11(a)(2). Specifically, Havener pled guilty to Count 1 of the indictment, which charged him with unlawfully possessing methamphetamine with intent to distribute in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(B), and to Count 5 of the indictment, which charged him with the unlawful possession of a sawed-off shotgun in violation of 26 U.S.C. 5841, 5845, 5861(d) and 5871. Havener was then sentenced to imprisonment for seventy-five months to be followed by five years of supervised release.
 
 
 2
 On appeal, Havener asserts that his arrest at the Natrona County International Airport in Casper, Wyoming, by a Special Agent of the Drug Enforcement Administration (DEA) and Special Agents for the Wyoming Department of Criminal Investigation (DCI), and the events leading thereto, violated his Fourth Amendment rights.[3]
 
 
 3
 In early April 1994, a Special Agent of the Federal Bureau of Investigation (FBI) and a Special Agent of the DEA received certain information from a confidential informant (CI), who from time to time had provided reliable information concerning other matters. Specifically, the CI told the agents that a man whom he knew only by his first name, "Ron," was dealing in drugs in the Casper, Wyoming area. Although he did not know the street address where Ron lived, the CI did give the agents a geographical description of the location of Ron's residence. The CI indicated he had been in Havener's residence, and that Havener kept guns in his basement. He also informed the agents that Ron's supplier lived in San Diego, California, and that Ron made periodic trips to San Diego to obtain drugs. The agents checked out the information given them by the CI and ascertained to their satisfaction that Ron was Ronald Edward Havener and determined where Havener resided. They also placed a "spread" surveillance on Havener's residence and observed known dealers in drugs in the Casper area entering and then leaving Havener's residence.
 
 
 4
 On May 23, 1994, the CI advised the authorities that Ron had driven a small red car, which Ron had recently purchased, to the Natrona County International Airport and had flown to California, possibly to Escondido, to pick up drugs. Acting on this information, the FBI and DEA agents went to the airport and discovered a red Honda in the long-term parking area. The authorities then determined to intercept Havener on his return from California and in the meantime established a surveillance on the red Honda.
 
 
 5
 When Havener got off a flight from Denver, Colorado to Casper on May 24, 1994, at about 8:30 p.m., the Special Agent of DEA and three Special Agents of the DCI were waiting. They observed Havener retrieve his car from the parking lot and intercepted him after he left the parking lot toll booth. The authorities identified themselves and asked him to step out of his car, which he did. He was then asked to produce his driver's license, but he had none. One of the DCI agents then "patted him down" to determine whether Havener was armed. The agent found no weapon, but he did find a cylindrical object inside both Havener's right and left socks, each containing a plastic bag wrapped in toilet tissue. The agent "patting down" Havener testified that based on his experience he believed the cylindrical objects contained contraband. It was later determined that the plastic bags contained methamphetimine.
 
 
 6
 At the hearing on the motion to suppress, the Special Agent of the DEA and two Special Agents of the DCI testified concerning the events leading up to Havener's arrest. Havener testified and counsel also called an investigator hired by Havener, who testified as to what the toll booth operator had told him concerning the arrest.
 
 
 7
 The evidence was conflicting. Havener testified that he was met by officers at the toll booth who thrust guns through the open window of his car and told him he was under arrest. The officers testified that no gun was ever drawn and pointed through the open window at Havener. They did agree that, for self protection, they had removed their guns from their holsters as they approached the car; however, they denied that the guns were ever pointed at Havener. They also denied that they told Havener that he was under arrest when he was still in the car. Their testimony was that it was not until they found the methamphetamine in Havener's socks that he was told he was under arrest, and that they then gave a Miranda warning.
 
 
 8
 After the hearing on the motion to suppress, the district court made written findings of facts and conclusions of law. In general, the district court accepted the testimony of the arresting officers and rejected Havener's version of events. In so doing, the district court found that the initial stop was not an arrest, but an investigative stop based on reasonable suspicion and permitted by Terry v. Ohio, 392 U.S. 1 (1968), and that the ensuing "pat-down" to check for weapons was within the scope of Terry. The district court further found that Havener was not arrested until after the agents found the cylindrical objects in Havener's right and left socks, and that by that point in time the agents had probable cause to arrest.
 
 
 9
 In reviewing a denial by a district court of a motion to suppress, we accept the district court's factual findings unless clearly erroneous. United States v. Moore, 22 F.3d 241, 242 (10th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 238 (1994). In the instant case, the district court's factual findings are not clearly erroneous, but are amply supported by the record. However, the ultimate issue of whether the facts, as thus found, justify a determination of "reasonableness under the Fourth Amendment" is reviewed by us de novo. United States v. Sato, 988 F.2d 1548, 1551 (10th Cir.1993).
 
 
 10
 Under the Fourth Amendment, law enforcement officers may conduct a brief, investigatory stop of a person if the officers have a reasonable suspicion, supported by articulable facts, that a person is, or is about to be, engaged in criminal activity. United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry, supra at 16-19. Whether an officer's conduct in detaining an individual is reasonable in any given case is determined according to the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981). Even if it is determined that an officer has reasonable suspicion to conduct a Terry-type stop, that stop must be "reasonably related in scope to the circumstances which justified the stop in the first place." United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir.1994) (quoting Terry, supra at 20).
 
 
 11
 We are in general accord with the district court's holding that Havener's Fourth Amendment rights were not violated by the events at the Natrona County International Airport. The CI gave the authorities rather detailed information regarding Havener, which was, at least to some degree, checked out and found to be accurate. The authorities also learned from the CI that Havener had gone to California to pick up some drugs and that he had parked his red Honda at the Natrona airport. The authorities then ascertained that Havener's red Honda was in the long-term parking lot and placed the car under surveillance. After watching Havener exit the airport terminal on May 24, 1994, and enter the red Honda, the authorities intercepted him at the parking lot toll booth. Certainly, all things considered, at that time they had a reasonable suspicion of drug dealing which would support a Terry-type stop.
 
 
 12
 Moreover, having been informed by the CI that Havener had firearms in his house, the officers were justified in using some display of force in effecting the Terry stop. See United States v. Perdue, 8 F.3d 1455, 1462-63 (10th Cir.1993). ("The use of guns in connection with a stop is permissible when the police reasonably believe [the weapons] are necessary for their protection.") Further, a "frisk for weapons" for the safety of the arresting officers, as well as the detainee, is not inconsistent with a Terry stop. Melendez, supra at 1051-53. Therefore, we cannot say that the agents exceeded the scope of the Terry stop by their actions in this case. Finally, the "patting-down" in the instant case disclosed the presence on Havener's person of methamphetamine. Certainly at that point in time the officers had probable cause to arrest Havener, which they did.
 
 
 13
 We conclude that the district court did not err in denying Havener's motion to suppress.
 
 
 14
 Judgment affirmed.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [3]
 Prior to entering his conditional plea of guilty, Havener also filed a motion to disclose the identity of a confidential informant. That motion was also denied. On page iv of his brief, counsel states that this appeal concerns not only the district court's order denying the motion to suppress but also includes the district court's denial of the motion to discover the identity of the confidential informant. We can find no other mention in Havener's brief of the district court's denial of the motion to discover. Such being the case, we deem that particular matter to have been waived, and it will not be considered by this court