BENTON, J.,
dissenting.
The only real issue at the suppression hearing was whether, as the defense contended, the initial search was state (governmental) action. The prosecution maintained that the initial search the law enforcement officers conducted should be deemed to haye been “effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (quoting Walter v. United States, 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)).
The prosecution did not, however, make any argument that probable cause supported, or that exigent circumstances justified, the warrantless search of a parcel that had been placed in the mail addressed to the defendant.[4] Nor would the evidence adduced at the suppression hearing have supported a finding of probable cause for the initial search or of exigent circumstances making a warrantless search lawful.
As the majority opinion acknowledges and as then Judge Pariente explained so felicitously, it is clear that the Fourth Amendment to the United States Constitution and Article I, section 12 of the Florida Constitution recognize as reasonable the expectation of privacy in mailed packages:
Florida’s constitutional right to be free from unreasonable searches and seizures, article I, section 12 of the Florida Constitution, requires us to interpret this right in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Fla. Const, art. *598 I, § 12. The Fourth Amendment, in protecting persons from unreasonable government intrusions into their legitimate expectations of privacy, extends to the contents of personal packages. See United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 120-21 (1983); Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); Ex parte Jackson, 96 U.S. 727, 6 Otto 727, 24 L.Ed. 877 (1877). In Ex parte Jackson, the Court established that sealed packages in the mail cannot be opened without a warrant:
Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one’s own household....
96 U.S. at 733.
A law enforcement officer’s authority to possess a package is distinct from his authority to examine its contents. See Place; Walter; Van Leeuwen. In Place, the Supreme Court reiterated this distinction stating:
Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.
462 U.S. at 701, 103 S.Ct. at 2641.
A person’s Federal Express package is entitled to no less protection than letters and packages sent through the United States Postal Service. Accordingly, in each of the reported cases addressing the issue of the propriety of the search of a lawfully seized Federal Express package based on a dog’s alert to the package, the law enforcement officer involved obtained a search warrant before searching the contents of the package. See, e.g., U.S. v. Smith, 34 F.3d 514 (7th Cir.1994); U.S. v. West, 25 F.3d 1052 (6th Cir.1994); U.S. v. Moore, 22 F.3d 241 (10th Cir.1994), cert. denied, [513] U.S. [891], 115 S.Ct. 238, 130 L.Ed.2d 161 (1994); U.S. v. Hall, 20 F.3d 1084 (10th Cir.1994).
Daniels v. Cochran, 654 So.2d 609, 612 (Fla. 4th DCA 1995). We are therefore under a constitutional duty to review the trial court’s conclusion that the initial search was not governmental action. See Green v. State, 824 So.2d 311, 314 (Fla. 1st DCA 2002).
“ ‘In reviewing search and seizure decisions, Florida courts and federal courts alike must apply different standards of review, depending on the nature of the questions presented. Aspects or components of the trial court’s decision resolving legal questions are subject to de novo review, while factual decisions by the trial court are entitled to deference commensurate with the trial judge’s superior vantage point for resolving factual disputes.’ State *599 v. Setzler, 667 So.2d 343, 344-45 (Fla. 1st DCA 1995). See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 605 (Fla.2001); State v. Eldridge, 814 So.2d 1138, 1140 (Fla. 1st DCA 2002).... ” Id.
Reviewing the findings and conclusions in the present case persuades me that the search (although not the seizure) amounted to governmental, and not merely to private, action. After all, the “plain smell” and search revealing that the first misde-livered parcel contained marijuana took place in an FBI office after the parcel had been examined with the help of an FBI x-ray machine, employed to ascertain whether law enforcement personnel could safely search the parcel.[5]
Probable cause for the concededly governmental (and, indeed, warranted) search of the second parcel depended on the results of the search of the first misdelivered package and so was “fruit of the poisonous tree.” Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The taint of the initial illegality had not dissipated, and nobody argues that it had.
On FBI premises, at the direction or at least with the cooperation of an on-duty FBI officer, an on-duty Florida deputy sheriff used a pocket knife to cut away — or through — enough packaging to reveal the first parcel’s contents. In my view, this collaboration between state and federal law enforcement officers cannot fairly be described as a “purely private search[].” Pomerantz v. State, 372 So.2d 104, 108 (Fla. 3d DCA 1979). I respectfully dissent.

. It is a violation of federal law to open a package placed in the mail "before it has been delivered to the person to whom it was directed.” 18 U.S.C. § 1702 (2007). The federal statute provides:
Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined under this title or imprisoned not more than five years, or both.
Id. (Emphasis supplied.)

. According to the majority opinion, the "trial court emphasized that at the time Armstrong opened the package, he ... feared he might be the victim of a crime.” Ante p. 592. An apparent purpose of x-raying the parcel was to determine whether it contained a bomb. Anthrax was also mentioned. Since sending a bomb or anthrax spores through the mail is illegal, these law enforcement officers had begun investigating possible criminal activity even before the incision and search that uncovered the evidence.