BALDOCK, Circuit Judge.
 

 Defendant-appellant Penny Hall entered a conditional guilty plea, Fed.R.Crim.P. 11(a)(2), to possession with intent to distribute less than fifty kilograms of marijuana. 21 U.S.C. § 841(a)(1). On appeal, Defendant challenges the district court’s denial of her motion to suppress the marijuana discovered in her luggage. We have jurisdiction under 28 U.S.C. § 1291.
 

 I.
 

 On January 21, 1991, Drug Enforcement Administration (DEA) Agent Kevin Small received an informant’s tip that Defendant would be on Amtrak Train Number Four when it arrived in Albuquerque, and that she “might be transporting drugs.” The informant provided Agent Small with a description of Defendant and her luggage, told Agent Small that Defendant was traveling in a sleeper car from Flagstaff, Arizona to Harrisburg, Pennsylvania, and provided a call back number which Defendant had left with Amtrak personnel. The informant had provided Agent Small with four previous tips, three of which resulted in the seizure of narcotics.
 

 Before the train arrived in Albuquerque, Agent Small contacted Amtrak and verified that Defendant had boarded the train in Flagstaff. He also telephoned the call back number and discovered that it was the number of a travel agency in Orange County, California. Agent Small then contacted Detective Jim Sheridan of the Albuquerque Police Department and asked Detective Sheridan to meet him at the train station with a narcotics detection dog. Detective Sheridan met Agent Small at the station, but was unable, after numerous attempts, to secure a dog.
 

 At 1:46 p.m., the train arrived in the station, and an attendant identified Defendant for Agent Small and Detective Sheridan. The attendant also identified Defendant’s suitcase which she had placed in the open luggage bin of her train car, allowing her free access to the suitcase throughout her trip. When Defendant entered the train station, Agent Small and Detective Sheridan confronted her. Detective Sheridan approached Defendant first, identified himself as a police officer, identified Agent Small who was standing ten feet away, and asked to see Defendant’s train ticket. The ticket was for one-way travel, had been purchased with cash on the day of travel, and was in Defendant’s name. Defendant also produced a Nevada driver’s license.
 

 During the course of the conversation, Detective Sheridan and Agent Small noted that Defendant appeared nervous and dropped either a cigarette or cigarette lighter. Detective Sheridan told Defendant that he regularly boarded trains looking for drug couriers, and asked Defendant if she was carrying any narcotics. Defendant stated that she was not. Detective Sheridan then asked for consent to search Defendant’s luggage and Defendant refused.
 

 Agent Small then approached Defendant and asked her about her travel plans. Defendant responded that she was from Reno, Nevada and was traveling to Harrisburg for three or four days to visit friends. Agent Small asked Defendant why she boarded the train in Flagstaff rather than Reno, and Defendant responded that she wanted to take the southern route. The conversation ended, and Defendant re-boarded the train. Moments later, Agent Small reboarded the train, went to the train’s luggage area and lifted Defendant’s suitcase finding it “very heavy.” Agent Small then approached Defendant in her train car and informed her that he was going to detain her suitcase in order to expose it to a trained dog. He explained that, if the dog alerted to the suitcase, he was going to get a search warrant and open it up; if not, the suitcase would be shipped back to her. Agent Small gave
 
 *619
 
 Defendant his business card and a receipt for the suitcase. He also asked for an address in Harrisburg or Reno where he could ship the suitcase to her if the dog failed to alert. After some hesitation and increased nervousness, Defendant located a Harrisburg Days Inn address in a motel guide, and asked that the suitcase be sent there. Defendant then identified her suitcase, which bore her name and address, and Agent Small took the suitcase and left the train.
 

 Approximately two minutes after removing the suitcase from the train, Agent Small sniffed the suitcase at its seal and smelled marijuana. At Agent Small’s invitation Detective Sheridan sniffed the suitcase and also smelled marijuana. At 4:55 p.m. Agent Small obtained a search warrant, opened the suitcase and discovered approximately forty pounds of marijuana. Defendant was subsequently arrested in Las Vegas, New Mexico.
 

 In the court below, Defendant filed a motion to suppress the marijuana, alleging that the seizure of her suitcase violated the Fourth Amendment. After an evidentiary hearing, the district court denied the motion, holding that the officers had reasonable suspicion to seize the suitcase. On appeal, Defendant raises a number of issues challenging the legality of the seizure and subsequent search of her suitcase. Because we find that the government lacked reasonable suspicion to seize her suitcase we need not address Defendant’s other claims.
 

 II.
 

 We review a district court’s findings of fact that give rise to reasonable suspicion under a clearly erroneous standard; however, “the question of whether such suspicion was reasonable under the Fourth Amendment is a question a law which we review de novo.”
 
 United, States v. Bloom,
 
 975 F.2d 1447, 1456 (10th Cir.1992) (citations omitted).
 

 A seizure of property, for purposes of the Fourth Amendment, occurs “when there is some meaningful interference with an individual’s possessory interest in that property.”
 
 United States v. Jacobsen,
 
 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Tangible property is seized when a police officer exercises control over the property by removing it from an individual’s possession,
 
 United States v. Place,
 
 462 U.S. 696, 707-708, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983), or when an officer informs an individual that he is going to take his property.
 
 Id.
 
 at 707, 103 S.Ct. at 2644 (Fourth Amendment seizure occurred when agents told Defendant, following his refusal to consent to a search, that they were going to take his luggage to a federal judge to secure a warrant). On the other hand, no seizure occurs when an officer merely picks, up an individual’s property to look at it, because this interference with the individual’s possessory interest is not meaningful.
 
 See Arizona v. Hicks,
 
 480 U.S. 321, 324, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987);
 
 New York v. Class,
 
 475 U.S. 106, 114, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986).
 

 There is no dispute that the officers seized Defendant’s suitcase for purposes of the Fourth Amendment, however the district court’s determination of when the seizure occurred is unclear from the record.
 
 [1]
 
 Defendant urges that her suitcase was seized when Agent Small first telephoned Detective Sheridan requesting that he secure a narcotics dog. We disagree. Agent Small placed the telephone call from Albuquerque before Defendant and her suitcase had even arrived in Albuquerque. The telephone call did nothing to deprive Defendant of her possessory interest in her suitcase, indeed she continued to enjoy the same access to the suitcase that she had prior to Agent Small’s telephone call. Furthermore, Agent Small’s lifting of Defendant’s suitcase did not constitute a seizure because this interference with Defendant’s possessory interests in her suitcase was minimal.
 
 See Hicks,
 
 480 U.S. at 324, 107
 
 *620
 
 S.Ct. at 1152 (officers moving stereo equipment in order to view serial numbers did not so interfere with the defendant’s pos-sessory interest in the stereo to constitute a Fourth Amendment seizure). The seizure in this case occurred when Agent Small informed Defendant that he was detaining her suitcase in order to expose it to a trained narcotics dog. As in
 
 Place,
 
 it was at this moment that Defendant lost free access to her suitcase and was meaningfully deprived of her possessory interest in the suitcase.
 
 See
 
 462 U.S. at 707, 103 S.Ct. at 2644. Therefore, the officers are required to have had reasonable suspicion to seize Defendant’s suitcase prior to informing her that it would be detained.
 

 Law enforcement officers may seize and briefly detain a traveler’s luggage provided that the officers have reasonable articulable suspicion that the luggage contains narcotics.
 
 Place,
 
 462 U.S. at 706, 103 S.Ct. at 2644;
 
 United States v. Scales,
 
 903 F.2d 765, 768 (10th Cir.1990). The concept of reasonable suspicion is not readily reduced to a neat set of legal rules,
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Rather, the totality of the circumstances must be taken into account, and based upon those circumstances, the seizing officers must have a “minimal level of objective justification” which the officers can articulate; an “inchoate and unparticularized suspicion or ‘hunch’ ” is insufficient.
 
 Bloom,
 
 975 F.2d at 1456 (quoting
 
 Sokolow,
 
 490 U.S. at 8, 109 S.Ct. at 1585).
 

 In
 
 Florida v. Royer,
 
 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983), the Supreme Court held that officers had reasonable suspicion to detain the defendant’s luggage when they knew that the defendant: (1) was young and casually dressed, (2) was traveling under an alias, (3) had paid cash for a one-way ticket, (4) was traveling from Miami, a drug source city, to New York, a destination city, and (5) had filled out luggage identification tags but omitted an address and phone number. The Court held that, taken together, these factors provided objective justification for detaining the defendant and his luggage.
 

 Likewise in
 
 United States v. Bell,
 
 892 F.2d 959 (10th Cir.1989),
 
 cert. denied,
 
 496 U.S. 925, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1990), we held that the officers had reasonable suspicion to detain the defendant’s package when the defendant: (1) attempted to conceal from the officers that he knew codefendant, (2) became increasingly nervous when questioned by a narcotics officer, and (3) turned his body from the officer in an attempt to conceal his package. Both of these cases involved some objectively suspicious activity which warranted further investigation by a reasonable law enforcement officer.
 

 On the other hand, in
 
 United States v. Ward,
 
 961 F.2d 1526 (10th Cir.1992), we held that the officers lacked reasonable suspicion to detain a train passenger suspected of transporting narcotics. Prior to the defendant’s seizure in
 
 Ward,
 
 the agents learned from a previously reliable informant that the defendant (1) was traveling alone under an alias, (2) had paid cash for a one-way train ticket, and (3) had reserved the largest private room on the train.
 
 Id.
 
 at 1528-30.
 

 We recently applied
 
 Ward
 
 in
 
 Bloom
 
 and held that the agents lacked reasonable suspicion to seize the defendant, who was traveling by train. 975 F.2d 1447. In
 
 Bloom,
 
 the agents knew that the defendant: (1) was traveling alone under his real name, (2) had reserved a private train compartment, (3) had paid cash for a one-way ticket, (4) had kept his luggage, a type commonly used by drug traffickers, in his private compartment, (5) had asked a train attendant why the agent was present on the train, and (6) appeared to the agent to be very nervous and somewhat excited.
 
 Id.
 
 at 1458. We held that these factors were even less supportive of a finding of reasonable suspicion than those in
 
 Ward. Id.
 
 at 1458.
 

 Although
 
 Ward
 
 and
 
 Bloom
 
 involve detention of a person, they are relevant here. The same degree or quantum of reasonable suspicion is required to detain a person as is required to detain a person’s
 
 *621
 
 luggage.
 
 United States v. Nurse,
 
 916 F.2d 20, 24 (D.C.Cir.1990).
 
 [2]
 
 Therefore, when we hold, as in
 
 Ward
 
 and
 
 Bloom,
 
 that a combination of factors cannot support reasonable suspicion that a train traveler was transporting narcotics, a similar combination of factors cannot support a reasonable suspicion that a traveler’s luggage contains narcotics. Indeed, in determining whether an officer has reasonable suspicion to detain a traveler
 
 and his luggage,
 
 courts, including this court, routinely apply the same test.
 
 See e.g., Royer,
 
 460 U.S. at 502, 505-06, 103 S.Ct. at 1328-29;
 
 Nurse,
 
 916 F.2d at 24;
 
 Bell,
 
 892 F.2d at 967-68;
 
 United States v. White,
 
 890 F.2d 1413, 1417 (8th Cir.1989),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990);
 
 United States v. Erwin,
 
 803 F.2d 1505, 1511 (9th Cir.1986).
 

 The facts in the instant case do not support a finding that the agents had reasonable suspicion to seize Defendant’s suitcase. First, Defendant’s increased nervousness and hesitation when asked by Agent Small to provide a Harrisburg address where her suitcase could be shipped, cannot be considered in determining reasonable suspicion, because these actions and statements occurred after her suitcase had been seized.
 
 See supra
 
 note 1. We also note that the officer’s detection of the odor of marijuana emanating from Defendant’s suitcase also occurred after the suitcase had been seized, and therefore cannot be a basis for reasonable suspicion.
 
 Id.
 
 Prior to the seizure of Defendant’s suitcase, the officers knew that Defendant: (1) boarded the train in Flagstaff rather than in her hometown of Reno, (2) was traveling under her real name, from Arizona to Harrisburg, (3) was traveling alone in a private compartment, (4) had paid cash for a one-way ticket, (5) had provided a callback number of a California travel agency, (6) was traveling with a suitcase that was “very heavy,” and (7) appeared nervous when approached by the officers.
 
 [3]
 

 Unlike the factors present in both
 
 Royer
 
 and
 
 Bell
 
 — e.g. traveling under an alias, attempting to evade officers — none of the factors in this case, except Defendant’s nervousness, are objectively suspicious. Instead, these factors are entirely consistent with innocent travel and therefore raise only a minimal degree of suspicion.
 
 Bloom,
 
 975 F.2d at 1458. Moreover, that Defendant appeared nervous after the officers identified themselves is of little significance, because, as in
 
 Bloom,
 
 neither officer had any prior contact with Defendant with which to compare her behavior, thereby making Defendant’s nervous appearance to the officers merely a hunch.
 
 [4]
 

 See id.
 
 at 1458. In addition, that Defendant’s suitcase was “very heavy” is similar to the observation in
 
 Bloom
 
 that the defendant’s suitcase was of a type commonly used by drug traffickers, and is afforded little weight in our analysis.
 
 See id.
 
 at 1458. In
 
 *622
 
 light of all the neutral circumstances in this case, the officers did not have the objective justification for the seizure of Defendant’s suitcase that is required by the Fourth Amendment.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . The timing of the seizure is important because the factors giving rise to the officer’s suspicion must have been known to the officers prior to the seizure.
 
 Bloom,
 
 975 F.2d at 1455-56;
 
 United States v. Scales,
 
 903 F.2d 765, 768 (10th Cir. 1990).
 

 [2]
 

 . Of course, whether the scope or length of detention is reasonable varies depending upon whether a person
 
 or
 
 his effects are being seized.
 
 See Place,
 
 462 U.S. 696, 705-710, 103 S.Ct. 2637, 2643-2646.
 

 [3]
 

 . That the informant who provided Agent Small with information also stated that Defendant "might be transporting drugs” adds nothing to our analysis, for the record makes it clear that the informant did not base this suspicion on personal knowledge of Defendant; rather, he based it solely on the factors he articulated to Agent Small.
 

 [4]
 

 . While a person’s nervous behavior may be relevant, we are wary of the objective suspicion supplied by generic claims that a Defendant was nervous or exhibited nervous behavior after being confronted by law enforcement officials, even recognizing that reasonable suspicion may be the sum of noncriminal acts and is based on the totality of the circumstances,
 
 see Sokolow,
 
 490 U.S. at 7-10, 109 S.Ct. at 1585-87. As we recently observed:
 

 In all search and seizure cases of the type here concerned, the government argues that a defendant’s nervousness, either alone or in conjunction with other factors, supports the contested search or seizure. This repetitive assertion by the Government in all cases of this kind must be treated with caution. It is common knowledge that most citizens ... whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness.
 

 United States v. Millan-Diaz,
 
 975 F.2d 720, 722 (10th Cir.1992).
 
 See also United States v. Walker,
 
 933 F.2d 812, 817 (10th Cir.1991);
 
 United States v. Guzman,
 
 864 F.2d 1512, 1520 (10th Cir.1988).