UNITED STATES of America, Plaintiff–Appellant,

v.

Allen John LEMOS, Jr., a/k/a J. Lance, Defendant–Appellant.

No. 93–2196.

United States Court of Appeals, Tenth Circuit.

Sept. 13, 1994.

Kathleen A. Felton, U.S. Dept. of Justice, Appellate Section, Crim. Div., Washington, DC (Larry Gomez, Acting U.S. Atty., and Tara C. Neda, Asst. U.S. Atty., Albuquerque, NM, with her on the brief), for plaintiff-appellant.

M. Alan Ceballos, Ceballos, Shorstein, Kelly and Daze, Jacksonville, FL (Richard J. Knowles, Albuquerque, NM, with him on the brief), for defendant-appellee.

Before KELLY, SETH and McWILLIAMS, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

The government appeals from the district court's granting of Mr. Lemos' motion to suppress evidence obtained incident to a search of his luggage. We have jurisdiction under 18 U.S.C. § 3731 and we reverse for further proceedings.

We have concluded that this appeal should be remanded in light of *United States v.*

*Little,* 18 F.3d 1499 (10th Cir.1994) (en banc), insofar as the factors evaluated by the district court do not constitute a nonconsensual encounter as a matter of law. *See id.* at 1504–05. We do note our agreement with the district court's conclusion that reasonable suspicion did not exist when Agent Candelaria began questioning Mr. Lemos. *See United States v. Hall,* 978 F.2d 616, 621 (10th Cir.1992); *United States v. Bloom,* 975 F.2d 1447, 1458 (10th Cir.1992).

On remand, the district court should consider whether there existed a sufficient level of individualized suspicion necessary to seize Mr. Lemos's luggage. This inquiry should include whether this incident was really commenced by a search, whatever thereafter developed, requiring probable cause, as discussed in Judge Seth's concurring opinion.

REVERSED and REMANDED.

SETH, Senior Circuit Judge, concurring.

From an examination of the Amtrak records the officer decided from a profile he used that Defendant was a drug courier traveling from Los Angeles. The officer obtained from the records on the train that Defendant occupied a particular compartment. The officer went to its location, saw the Defendant leave it, and when the Defendant returned and entered the compartment, the officer went to the compartment and knocked on the door. Apparently he could not see in nor could the occupant, the Defendant, see out. The officer *did not* announce his identity, and as would be expected, and as the officer intended, the Defendant opened the door.

As the door opened, because the officer was very close, and because the compartment was small, its entire interior was immediately visible and available to the officer. (App. pgs. 40, 80.) The officer immediately saw two bags, a large black Samsonite suitcase (allegedly commonly carried by drug couriers), and a multicolored duffle bag. The type of luggage the passengers carried was to the officer a very significant factor in the profile. The officer testified that the new large suitcase was a "critical factor." (App. pgs. 59–60.)

Again, having caused the door to be opened, the officer was immediately able to see and so did see the luggage (the court so found, App. p. 80), and everything else. The officer may or may not have stepped in at first, but did so later to remove the bags.

Thus with the application of typical search doctrines with the opening of the door, a *search* was then and thereby begun, a search of at least questionable validity which culminated in a seizure.

His commencement of the search was *followed* very shortly by the agent revealing his identity to the passenger, and commencing an "encounter" by his questioning of the passenger. The two police actions thereafter proceeded concurrently. It is significant that the "encounter" almost *immediately* included a question/request directed to the luggage revealed when the search first began. The officer's repeated request was to permit him to remove the luggage for a dog sniff. The luggage again assumes significant importance.

There is often in the cases usually cited a mix of the concepts of "expectation of privacy," an "encounter," a "consensual encounter," and whether "reasonable suspicion" developed during an encounter. The Fourth Amendment protects against "unreasonable searches and seizures." "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85; *see also Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

Subjecting a person's luggage, when it is properly obtained or exposed, to a brief detention in order to conduct a dog sniff does not ordinarily improperly interfere with either an expectation of privacy or with a property interest. It is very different, however, when a police officer approaches a closed private roomette or compartment and does not identify himself but causes the door to be opened. Then to immediately see the luggage, to him a kind which is very suspicious and very significant, and then seek to

remove it to some other place. The request is refused, but he steps in and removes the luggage from the compartment to take it to another place. This scenario must call into serious question whether an illegal search was conducted at the outset. This question was expressly not considered by our court in *United States v. Little,* 18 F.3d 1499 (10th Cir.).

The decision of the *en banc* court in *Little* is controlling in cases where the sole issue, as there considered, is whether a consensual encounter as it developed was constitutionally permissible. The appeal there and opinion thus concerned the reasonable suspicion element in a consensual encounter and only that. We have another and separate question here.

The facts of *Little* also differ from the situation presented in this appeal. The officer in *Little* saw a new suitcase in a public storage area on the Amtrak train. He considered it to be suspicious, asked the train attendant to whom it belonged and was told it belonged to Little in a certain roomette. The officer then went to this roomette. In *Little the door was open* and he could see inside the small area. The passenger, Little, was inside. The officer showed his badge through the open doorway and the encounter thus began. After some questioning, the officer asked if Little would open the small bag in sight, but she declined. The officer then asked if Little would go with him to the public area where he had seen the suspicious new suitcase, and knew to whom it belonged. After more questions, the new suitcase was put to a dog sniff, the dog reacted, and Little was arrested.

These events in *Little* constituted only an encounter and were so treated by the court. The case was remanded for a limited purpose—an *encounter* analysis. The *Little* appeal thus concerned only an *encounter* and no *search* considerations were present. Again, in the case before us, we are faced with and concerned with search doctrines.

In *Little,* this court overruled the statement in *United States v. Dimick,* 990 F.2d 1164, 1166 (10th Cir.), that equated the degree of privacy in a hotel or motel to a private roomette on a train. The court quot-ed from *United States v. Whitehead,* 849 F.2d 849, 853 (4th Cir.):

> " '[W]e reject the contention that a passenger train sleeping compartment is a "temporary home" for fourth amendment purposes. While occupants of train roomettes may properly expect some degree of privacy, it is less than the reasonable expectations that individuals rightfully possess in their homes or their hotel rooms.' "

In *Little,* we declined to determine what this "some degree of privacy" was, stating that this inquiry may only be relevant if a search of a compartment was involved.

> "We need not determine the precise level of any 'higher' expectation of privacy in a train roomette, however, because any such expectation of privacy has only a limited relevance to the question of whether a police-citizen encounter in such a roomette is consensual. While a person's "higher expectation of privacy" in his or her train compartment would have some relevance if we were reviewing a search of the compartment, it has limited relevance to the question of whether a reasonable person would believe that he or she is unable to terminate the encounter.' *United States v. Bloom,* 975 F.2d 1447, 1453 n. 6 (10th Cir.1992)....''

We still need not here precisely determine what the level of privacy interest in a roomette is. The fact that this court several times has recognized some privacy interest is enough to trigger a search analysis based on the officer's actions. In my view, when the sequence of events, although compressed in the time span, is examined closely within the search doctrines, and considering the importance placed by the officer on the luggage, it should be concluded that there was here a search. This would necessarily require consideration of the above quoted portions of *Little* and *Whitehead,* although they may be dicta. This should be done.

*Dimick* recognized that in order to *search* a sleeper compartment, probable cause is necessary. *Dimick,* 990 F.2d at 1165 (citing *United States v. Bloom,* 975 F.2d 1447, 1453 n. 6 (10th Cir.)). *Little,* as mentioned, overrules *Dimick* to the extent that it equated a

motel room with a roomette. In *Little*, the court said again as to this matter:

> "Whatever 'higher' expectation of privacy a traveler may have in a private roomette, we hold that such roomettes do not confer upon occupants the same degree of privacy as a dwelling or hotel or motel room, and we overrule any contrary statement in *United States v. Dimick.*"

The comparison of a hotel room with a roomette was reversed but the concept of an expectation of privacy in a roomette remains.

In railroad search cases, such as this one, the luggage becomes the initial and central factor. Thus a suspicious looking suitcase makes, with little more, the person to whom it apparently belongs a suspicious person. Here, the luggage was apparently the first thing seen by the officer as the door was opened. It was to him critical; it was the fruit of a search. The officer next turned to the encounter. An invalid search as first took place here would invalidate the seizure of the luggage. The search here triggered the encounter as well.

I would remand for a recognition and consideration of the expectation of privacy in the context of the search issue presented in this case as suggested by *Little* and *Bloom*.

McWILLIAMS, Senior Circuit Judge, concurring.

I concur, but disassociate myself from the comment in the opinion that "[w]e do note our agreement with the district court's conclusion that reasonable suspicion did not exist when Agent Candelaria began questioning Mr. Lemos." I doubt that I agree with such comment, and in any event, deem it to be unnecessary.