**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Pete VALLES, Defendant–Appellant.**

No. 01–2265.

United States Court of Appeals,
Tenth Circuit.

June 3, 2002.

Phillip P. Medrano, Assistant Federal Public Defender, Albuquerque, NM, for Defendant–Appellant.

Norman Cairns, Assistant U.S. Attorney, (David C. Iglesias, U.S. Attorney, with him on the brief), Albuquerque, NM, for Plaintiff–Appellee.

Before EBEL, BALDOCK, and HARTZ, Circuit Judges.

EBEL, Circuit Judge.

Defendant–Appellant Pete Valles pled guilty to drug and weapon possession, subject to appeal of the denial of his motion to suppress. On appeal, he argues that the police lacked reasonable suspicion to stop him for a drug sniff of his luggage as he exited a train. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

**I.**

Valles pled guilty to possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and § (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). His guilty plea was conditioned upon his ability to appeal the district court's denial of his motion to suppress.

Valles took an Amtrak train from Fullerton, California, to Albuquerque, New Mexico, leaving October 17, 2000, and arriving the next morning. DEA Agent Kevin Small is a member of a drug interdiction unit that monitored daily the reservations of train passengers arriving in Albuquerque. Small identified Valles's reservation as suspicious based on the fact that Valles had used cash to purchase a one-way ticket on the date of travel. Small's suspicions were heightened when another officer called the call-back num-

ber provided by Valles when he purchased the ticket, and the person who answered stated that there was no one there by that name. Small did not know what Valles looked like.

Valles exited the train with two bags on the morning of October 18. Small approached an unknown man (who turned out to be Valles), aiming first to determine whether the man was among those Small had flagged as suspicious. Small asked to speak with him, and Valles agreed. Small asked Valles where he was coming from, and Valles responded Fullerton. Small then asked to see his ticket, and Valles showed him a ticket for a passenger named Michael Martinez.

Small then asked to see identification to confirm that the passenger was Michael Martinez (and thus not a passenger he was looking for). Valles then produced a California driver's license in Valles's name. Small found the presentation of the Martinez ticket significant "because it showed that earlier at some other time [Valles] had used—traveled on Amtrack [sic], but he had used another name." At one confusing point in the conversation, Valles appeared to tell Small that he had purchased a round-trip ticket, when in fact his ticket was one-way; Small concluded that Valles was lying to him.

Small then asked Valles if he would consent to a search of his luggage. Valles responded by asking why Small had singled him out, to which Small responded by identifying the one-way cash ticket purchase the day before. The two then talked about how Valles lived in Albuquerque and

why he had been in Fullerton. Small then asked him again whether he would consent to a search, and Valles again asked how he had been chosen. Small then commented on the inconsistency between Valles's name and the name on the ticket, and noted the oddity of traveling under another name. Small testified: "And he said that was just something he did, and there's nothing wrong with it."

Small testified that Valles began their encounter in a very easy going manner, but "when I got to the pointed question about the luggage, he couldn't quite complete his sentences." He continued:

> [H]e was repeating what he had just said. He'd have to say the word a couple of times. And that, to me, in all my years of experience, that was a very important factor. We went from a normal conversation to a conversation where he could not complete a thought, and it wasn't the same guy I was talking to thirty seconds prior.

On cross-examination, Small stated that Valles was "repeating one word after another" and that "the conversation had changed a little bit, or his vocal skills had changed a little bit."

Finally, Small asked again for consent to search the bags. Valles denied consent. Small told Valles that he would detain the bags for a dog sniff.[1] Valles attempted to pick up the bags and leave, and Small prevented him. Ultimately, the dogs alerted to both bags, and methamphetamine and a firearm were found inside.

---

**1.** Neither the parties nor the district court addressed precisely when the seizure occurred. We conclude that it happened at this moment, when Small told Valles that he would detain the bags for a dog sniff, *see United States v. Hall,* 978 F.2d 616, 619 (10th Cir.1992) (seizure of luggage occurs upon meaningful interference with possessory in-

terest), and therefore that all of the preceding events are relevant to the reasonable suspicion inquiry. *See id.* at 619 n. 1 ("The timing of the seizure is important because the factors giving rise to the officer's suspicion must have been known to the officers prior to the seizure.").

The district court held an evidentiary hearing on Valles's motion to suppress and found that the totality of the following factors gave rise to Small's reasonable suspicion: (1) Valles purchased a one-way ticket in cash shortly before his departure; (2) the person who answered the phone at the call-back number Valles provided said that a man by the name of Pete Valles did not live there;[2] (3) Valles provided Small with a ticket in the name of Michael Martinez for travel two weeks earlier but gave him his driver's license with his correct name; and (4) Valles became nervous when the conversation was directed to his bags.

## II.

"We review a district court's findings of fact that give rise to reasonable suspicion under a clearly erroneous standard; however, the question of whether such suspicion was reasonable under the Fourth Amendment is a question of law which we review de novo." *United States v. Hall*, 978 F.2d 616, 619 (10th Cir.1992) (internal quotation marks omitted). We consider the facts "in the light most favorable to the government." *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir.1999) (internal quotation marks omitted).

■ We assess reasonable suspicion in light of the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). Reasonable suspicion is a "minimal level of objective justification which the officers can articulate," as distinct from "an inchoate and unparticularized suspicion or hunch." *Hall*, 978 F.2d at 620 (internal quotation marks omitted). A factor may contribute to reasonable suspicion even if it "is not by itself proof of any illegal

conduct and is quite consistent with innocent travel." *United States v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

■ We find, as the district court did, that the factors surrounding Valles's stop, when viewed in their totality, gave rise to reasonable suspicion for Small's stop and seizure. In addition to the details concerning the purchase of the ticket, such as it being a one-way ticket, purchased with cash, bought shortly before Valles's departure, Small had the opportunity to witness other factors that gave rise to his reasonable suspicion. Specifically, Small reasonably believed he had been lied to when Valles appeared to tell him that he had purchased a round-trip ticket, when in fact Valles possessed a one-way ticket. Further, Valles informed Small that traveling under an alias was "just something he did," without any explanation of the practice. Even though Valles claims that he was not traveling under an alias on this trip, because he showed Small his correct driver's license, he initially showed Small the Martinez ticket, and did not proffer his license until Small asked for a photo identification. Small testified that when Valles handed him the Martinez ticket, "I didn't think I had the guy we were looking for because we were looking for the name of Pete Valles." Small's testimony suggests that had he not asked Valles for identification, he would have ended his questioning of Valles, mistakenly believing that he was Michael Martinez. Precedent makes clear that traveling under an alias contributes to reasonable suspicion. *See Sokolow*, 490 U.S. at 9, 109 S.Ct. 1581; *Florida v. Royer*, 460 U.S. 491, 493–94, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *cf. Hall*, 978 F.2d at

**2.** Valles testified that he gave the number of a pay phone as the call-back number. The record does not reflect, however, that the person who answered the phone informed the agent who called the number that it was a pay phone.

621 (noting that traveling under an alias is objectively suspicious).

Finally, Small had the opportunity to observe Valles's demeanor before Small directed the conversation to Valles's bags, thereby giving Small a baseline behavior to which he could compare Valles's later extreme nervousness.[3] Small's observation of the change in Valles's behavior once the topic of conversation changed, distinguishes this case from *Hall*, in which we noted,

> that Defendant appeared nervous after the officers identified themselves is of little significance, because ... neither officer had any prior contact with Defendant with which to compare her behavior, thereby making Defendant's nervous appearance to the officers merely a hunch.

*Hall*, 978 F.2d at 621 (citations and footnote omitted).

## III.

Viewing the factors in their totality, and in the light most favorable to the government, we believe that Small had reasonable suspicion to stop Valles for a drug sniff of his luggage. Accordingly, we affirm the district court's denial of the motion to suppress.

---

3. We note that Valles's nervousness in this case was such that it greatly impacted his ability to communicate. Small testified that Valles "couldn't quite complete his sentences," and that "he was repeating what he had just said. He'd have to say the word a couple of times .... it wasn't the same guy I was talking to thirty seconds prior."