UNITED STATES of America,
Plaintiff,

v.

Frank Thomas MOLINA, Defendant.

No. 04–40103–01–SAC.

United States District Court,
D. Kansas.

Dec. 16, 2004.

Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for Defendant.

James A. Brown, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This drug case, arising out of a traffic stop, comes before the court on defendant's motion to suppress evidence (Dk.15).

**Facts**

On August 7, 2004, at about 4:30 a.m., Willie Wallenberg, a deputy with the Geary County Sheriff's Department, stopped an eastbound vehicle bearing California tags on I–70 highway near milepost 310. He noticed that the vehicle had dark tinted windows. He decided to stop the vehicle because he observed it driving on the right side of the white fog line and traveling at approximately 50 m.p.h. in a 70 m.p.h. zone, both of which raised the deputy's suspicions that defendant may be lost or under the influence of alcohol, and also because the vehicle tag inquiry reported "no record found." No challenge is made to the initial stop.

Once he stopped the vehicle, the deputy approached the vehicle and made contact with the driver, who identified himself as the defendant. It was then clear to Deputy Wallenberg that defendant was not under the influence. The deputy immediately detected a strong odor he believed to be glue or a cleaning agent, and noticed that the small vent on the left side of the dash, next to the door, was missing. The defendant advised the deputy that he was traveling to St. Louis to visit his daughter for a stay of undetermined length. Another officer arrived to assist soon after defendant was stopped.

After this initial conversation, Deputy Wallenberg asked defendant for his driv-

er's license and paperwork for the vehicle. During their conversation, the deputy noticed that the defendant's hand was shaking "pretty vigorously" and that defendant kept moving his legs back and forth, which led the deputy to believe that defendant was extremely nervous. Deputy Wallenberg also noticed that the back seat contained no luggage, but contained some empty water bottles. The defendant was unable to provide proof of insurance for the vehicle, and stated that it belonged to a friend of his, named David Morales.

Deputy Wallenberg then returned to his patrol vehicle and found that defendant had no outstanding warrants for his arrest, but had a criminal history for possession of a loaded firearm in public and for drug possession. After the wants and warrants check turned up nothing, and the deputy confirmed that the car was not stolen, the deputy walked back to the defendant's vehicle and issued him a warning citation for illegal window tint.

When Deputy Wallenberg returned all of the defendant's documentation to him, he noticed that defendant continued to move his legs back and forth. He told defendant, "Appreciate your cooperation, sir. You have a safe trip," then turned toward his patrol vehicle. When he had taken a step or two toward the trunk of the defendant's vehicle, the deputy turned around and asked, "Oh, sir, could I ask you a few more questions?" Defendant advised that he could. The deputy then asked where he was going, how long his daughter had lived there, and if defendant had any guns, drugs, or bazookas. After defendant replied negatively, Deputy Wallenberg asked, "Can I look through your vehicle?" Defendant advised that there was nothing in the car but the deputy could search if he wanted to.

The officers then started to search the vehicle. After approximately 17 minutes of searching, the officers found packaged cocaine and heroin which had been hidden in the dashboard. Defendant was then arrested.

## Motion to suppress

Defendant contends that he was illegally detained without legal cause after the traffic stop was completed, and that his consent to the search of the vehicle was coerced by the officer's illegal actions. Defendant further contends that even if the consent was voluntary, it was the fruit of the illegal detention.

## Consensual encounter

 The reasonableness of an investigative detention is judged under the principles of *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under that precedent,

> ... an officer may extend a traffic stop beyond its initial scope if the suspect consents to further questioning or if the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal activity. *See United States v. Patten,* 183 F.3d 1190, 1193 (10th Cir.1999). A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority....Whether an encounter can be deemed consensual depends on "whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." *Id.*

*United States v. West,* 219 F.3d 1171, 1176 (10th Cir.2000).

Defendant contends that, notwithstanding the officer's return of his documentation, the encounter remained a detention and any consent to search was coerced because of the following four factors: (1)

the location of the encounter was "isolated" given the time of day, which was 4:30 a.m.; (2) the deputies were armed, although no weapons were drawn prior to the discovery of contraband in the car he was driving; (3) the defendant was never told he had a right to terminate the encounter or refuse to consent or answer questions, and (4) the officer's words, although couched as requests, were implied commands which would lead a reasonable person to believe he was being detained further. *See* Dk. 16 at 3–4.4 Defendant argues that these factors also had the effect of making his consent involuntary.

■ To prevail on his theory that these factors had the effect of the extending the detention, defendant must show that the officers engaged in a coercive show of authority. *United States v. Bustillos-Munoz*, 235 F.3d 505, 515 (10th Cir.2000) ("[R]eturning a driver's documentation may not end the detention if there is evidence of 'a coercive show of authority', such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled.") (quoting *United States v. Turner*, 928 F.2d 956, 959 (10th Cir.1991)).

■ Coercion is also relevant to the question whether defendant's consent was valid. Valid consent is that which is "freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Whether a defendant freely and voluntarily gave consent to a search during a consensual encounter with a police officer is a question of fact to be determined from the totality of the circumstances. *Patten*, 183 F.3d at 1194 (citing *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). The government bears the burden to show that the consent was voluntary. *Id.* "In determining voluntariness, we consider

whether the consent was 'unequivocal and specific and freely and intelligently given,'" and whether it was given without implied or express duress or coercion. *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir.1997) (quoting *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir.1995)).

■■ Defendant contends that coercion is shown by the facts that two armed police officers stopped defendant in the early morning, then asked questions and did not tell defendant he had a right not to answer them. However, an officer is not required to inform a suspect that he does not have to respond to his questioning or that he is free to leave, *see Patten*, 183 F.3d at 1194, and it is immaterial that officers are in uniform when asking a suspect if he will consent to additional questioning, *see United States v. Taverna*, 348 F.3d 873, 879 (10th Cir.2003), *citing United States v. Werking*, 915 F.2d 1404, 1409 (10th Cir.1990). Thus the first two of defendant's facts are not indicative of coercion. The early morning hour is a fact not within the control of the officers, and cannot alone constitute coercion. Further, Deputy Wallenberg testified, and the tape of the stop confirms, that there was traffic passing the parties on this public road, despite the earliness of the hour.

■ Defendant's primary assertion seems to be that a reasonable person would construe any request by an officer under similar circumstances as an implied command, and would not feel free to deny an officer's requests that defendant answer additional questions and permit him to search his vehicle. The theory that "there is an implied command, and consequently an element of presumptive coercion, whenever a superior asks a question of a subordinate, who either does not know, or has not been warned of, his privilege against self-incrimination" may be recognized in

military cases, *see United States v. Sherwood,* 1953 WL 1550(ABR), 7 C.M.R. 311, 314 (ABR, 1953), but has no application here.

The government has met its burden to show that defendant's consent was voluntary and uncoerced. The testimony and recording of the stop show that the defendant spoke English, responded appropriately to the deputy's initial questions, and gave no indication that he did not understand. The deputy's request for consent was made in a normal tone of voice without any showing of weapons, and without express or implied threats. Although a second officer was present, no allegation is made that he did anything other than stand on the passenger side of the vehicle throughout the stop. Thus no evidence has been shown of any police conduct which would have conveyed to a reasonable person that he was not free to decline the officer's requests or otherwise terminate the encounter.

The court finds that under well established precedent in this jurisdiction, the traffic stop became a consensual encounter when the officer returned defendant's documents to him, told him "thanks," and "have a safe trip," stepped away from the driver's window, then asked him for permission to ask defendant additional questions.

**Reasonable suspicion**

In the alternative, the government contends that in the event that the encounter was not consensual, but remained a detention, the officer had reasonable suspicion of criminal activity, warranting the detention.

■■■ The Tenth Circuit has recently held:

> ... it is permissible for an officer to detain a driver for further questioning beyond that related to the traffic initial stop "if he has an objectively reasonable and articulable suspicion illegal activity

has occurred or is occurring." *United States v. Hunnicutt,* 135 F.3d 1345, 1349 (10th Cir.1998). "Reasonable suspicion is a minimal level of objective justification which the officers can articulate, as distinct from an inchoate and unparticularized suspicion or hunch." *United States v. Valles,* 292 F.3d 678, 680 (10th Cir.2002) (internal quotation marks omitted).

*United States v. Pina–Aboite,* 109 Fed. Appx. 227, 235, 2004 WL 1814192, *7 (10th Cir.2004).

■■■ Odor-masking agents are often used in combination with other factors to form an adequate basis for an officer's reasonable suspicion. *See e.g., United States v. Wilson,* 96 Fed.Appx. 640, 647, 2004 WL 928270, *7 (10th Cir.2004) (finding reasonable suspicion where officer noted ether-like odor, knew defendant was suspected of involvement in the manufacture of methamphetamine, and saw a covered object between defendant's feet large enough to contain implements used to manufacture methamphetamine); *United States v. Stone,* 866 F.2d 359, 362 (10th Cir.1989) (holding the odor of Patchouli oil, the officer's knowledge that the oil was often used to mask the odor of illegal drugs, and the officer's learning from the DEA that the driver was suspected of involvement in drug smuggling gave rise to reasonable suspicion); *United States v. Lopez,* 777 F.2d 543, 551 (10th Cir.1985) (holding the odor of "an ether-like substance" in combination with other circumstances gave officers probable cause to search a vehicle). Deputy Wallenberg testified that the strong odor of glue or a cleaning agent, coupled with the absence of any evidence of spilled bottles of glue or cleaning agents in the vehicle, was unusual, and helped create reasonable suspicion to detain the defendant. Although Deputy Wallenberg did not articulate any connec-

tion between the odor and his conclusion that defendant might have been transporting illegal drugs, the odor nonetheless contributes to a reasonable and articulable suspicion in an officer of his experience.

The missing vent is a weighty, specific, and objective factor supporting a reasonable inference that defendant may have been trafficking in drugs. Because "signs that a vehicle's paneling or natural configuration has been altered often lead law enforcement officers to the discovery of contraband," such observations "could contribute to ... [a] reasonable suspicion of illegal activity." *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir.1997) (citing cases). The deputy testified that because of his experience, coupled with the fact it was unusual for a new vehicle such as the one driven by defendant to have a missing vent, he believed the dash might have been altered for the purpose of concealing drugs.

These factors, coupled with defendant's extreme and continuing nervousness, and his driving a third-party vehicle on a trip that may last two to three weeks, are sufficient to provide reasonable suspicion that criminal activity was afoot, warranting the detention.[1] In light of the rulings above, the court finds it unnecessary to address defendant's contention that his consent was fruit of an illegal detention.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Dk.15) is denied.

---

1. The court places no weight upon the absence of luggage in the back seat or the presence of water bottles in the back seat.