**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

TONY KA KAY MA,

      Defendant-Appellant.

No. 06-8096
(D.C. No. 06-CR-39-WFD)
(D. Wyoming)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL, SEYMOUR**, and **EBEL**, Circuit Judges.

Mr. Ma was charged with possession with intent to distribute less than 50

kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).

After the district court denied his motion to suppress, he conditionally pled guilty

to the charge. He appeals and we affirm.

In the early afternoon of December 7, 2005, Wyoming Highway Patrol

Trooper Jeremy Mrsny was parked in the median of Interstate 80 in Laramie

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH
CIR. R. 32.1.

County, Wyoming, facing west. Trooper Mrsny clocked Mr. Ma's speed at 74 miles per hour, one mile per hour under the posted speed limit of 75. When Mr. Ma spotted Trooper Mrsny, however, he quickly decelerated from 74 to 55 miles per hour. Trooper Mrsny observed the vehicle drift right and over the fog line. Having observed the lane violation, and feeling concerned that the driver might be fatigued or intoxicated, Trooper Mrsny initiated a traffic stop. As he approached Mr. Ma's vehicle, he noticed a duffel bag and a jacket on the rear seat. When Mr. Ma rolled down the front passenger window, the trooper smelled a strong odor of dryer sheets or fabric softener coming from inside the vehicle. He also observed food snacks, an energy drink, and a road-map in the front passenger seat.

Trooper Mrsny asked Mr. Ma for his license, registration, and proof of insurance. As Mr. Ma was producing his license and a rental agreement for the vehicle, Trooper Mrsny witnessed what he considered signs of extreme nervousness: shaking hands and heavy breathing. Trooper Mrsny also noticed that the rental agreement reflected that a third-party had rented the vehicle, and that Mr. Ma was merely an authorized driver. Trooper Mrsny asked Mr. Ma to accompany him back to the patrol car.

When he got into the patrol car, Mr. Ma was shaking and breathing so heavily that Trooper Mrsny asked him if he was okay. Mr. Ma responded he was cold. Trooper Mrsny then wrote out a warning ticket for lane use violation and

asked Mr. Ma about his travel plans. Mr. Ma said he was coming from San Francisco and on his way to Minneapolis for a wedding. He explained he had taken vacation time for the trip prompting Trooper Mrsny to inquire about his occupation. Mr. Ma responded that he worked in retail, which Trooper Mrsny found puzzling given that it was the Christmas season. He commented to Mr. Ma he thought it was strange a job like that would give him vacation time at that time of year. Mr. Ma responded, "I don't know." Trooper Mrsny gave Mr. Ma a warning ticket, returned his license, and the rental agreement, and told him that he was free to leave.

Before Mr. Ma got back into his rental vehicle, Trooper Mrsny exited his patrol car and asked permission to ask more questions. Mr. Ma agreed. Trooper Mrsny explained that Mr. Ma did not have to answer his questions, and again repeated his request. Again, Mr. Ma agreed. Trooper Mrsny re-questioned him about his travel plans. This time, Mr. Ma replied that he was going to Minneapolis to deliver Christmas presents to his family, but then quickly added that he was also going to a wedding. When asked whether he had family in Minneapolis, however, Mr. Ma responded that he did not. When asked about the wedding, Mr. Ma said the couple getting married were "friends of a friend"and that he only knew the groom as "Ryan." When Trooper Mrsny asked Mr. Ma whether he was carrying controlled substances, Mr. Ma responded that he was not. He declined, however, to consent to a search of the vehicle. Based on what

Trooper Mrsny had already observed, he believed that Mr. Ma was involved in illegal drug activity, detained him, and requested a canine drug-detection unit.

A second trooper, Jason Green, arrived with his drug-sniffing dog. The dog alerted near the open passenger window and again at the trunk of the car. A search of the vehicle revealed two duffle bags that contained over 70 pounds of marijuana. Approximately forty-three minutes elapsed between the start of the traffic stop and the discovery of the marijuana.

Following a suppression hearing, the district court held: (1) Trooper Mrsny had reasonable articulable suspicion that Mr. Ma had committed a traffic violation sufficient to justify the initial stop, (2) Mr. Ma freely consented to the additional questioning after he exited the patrol vehicle, and (3) the subsequent detention and canine sniff of Mr. Ma's vehicle was justified because Trooper Mrsny had reasonable articulable suspicion that Mr. Ma was involved in drug trafficking. The district court found that seven factors, when evaluated together, gave Trooper Mrsny reasonable articulable suspicion: (1) Mr. Ma's rapid deceleration upon seeing Trooper Mrsny despite the fact that Mr. Ma was already driving below the speed limit, (2) the smell of dryer sheets emanating from the car, (3) Mr. Ma's signs of extreme anxiety throughout the stop, (4) the fact that Mr. Ma was driving a rental car rented by someone who was not in the vehicle at the time, (5) Mr. Ma's planned journey between a known source city for drugs to a known destination city, (6) the fact that Mr. Ma indicated that he was going to a wedding

but had no visible dress clothes in the passenger compartment of the car, and (7) the presence of the atlas, energy drink, and fast food wrappers in the front seat of the car.

When reviewing a denial of a motion to suppress, we "accept the district court's factual findings unless clearly erroneous," and view the evidence in the light most favorable to the government. *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997). We review de novo the ultimate determination of the reasonableness of the search under the Fourth Amendment. *Id*. "The defendant bears the burden of establishing a Fourth Amendment violation." *United States v. Patterson*, 472 F.3d 767, 775 (10th Cir. 2006).

Because a routine traffic stop is more analogous to an investigative detention than a custodial arrest, we "analyze such stops under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968)." *U.S. v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). To determine the reasonableness of an investigative detention, we make two inquiries: "whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Only the second prong of *Terry* is at issue here.

Once Trooper Mrsny completed the warning and returned Mr. Ma's license and rental agreement, he could not extend the scope of the detention by asking further questions unless he had either "objectively reasonable and articulable

suspicion illegal activity [had] occurred or [was] occurring," or consent from Mr. Ma to ask additional questions. *Hunnicutt*, 135 F.3d at 1349; *see also Patterson*, 472 F.3d at 776. We agree with the district court's conclusion that Trooper Mrsny had consent from Mr. Ma to ask additional questions.

After Trooper Mrsny gave Mr. Ma the warning and returned his documents, he told him, "You are free to go." Several moments later, as Mr. Ma was returning to his vehicle, Trooper Mrsny approached him again, inquired if he could ask more questions, and informed him that he did not have to answer. Mr. Ma agreed to answer the additional questions. Nevertheless, he contends that when the Trooper said "he was free to leave, he was only doing the 'Wyoming Highway Patrol two-step' since the trooper was not going to let him go." Aplt. Br. at 4. The law is clear, however, that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Trooper Mrsny's intentions are thus irrelevant. Mr. Ma consented to the additional questions, and that is sufficient to establish Trooper Mrsny did not violate the Fourth Amendment by asking them. *See Patterson*, 472 F.3d at 776; *Hunnicutt*, 135 F.3d at 1349.

When Trooper Mrsny detained Mr. Ma and requested a canine drug-detection unit, however, the encounter was no longer consensual and the detention had to be justified by "objectively reasonable and articulable suspicion illegal activity [had] occurred or [was] occurring." *Hunnicutt*, 135 F.3d at 1349; *see also*

*Patterson*, 472 F.3d at 776. "We assess reasonable suspicion in light of the totality of the circumstances." *United States v. Valles*, 292 F.3d 678, 680 (10th Cir. 2002). Reasonable suspicion must be based on a "minimal level of objective justification which the officer[] can articulate." *United States v. Hall*, 978 F.2d 616, 620 (10th Cir. 1992) (quotation marks omitted). It cannot arise from "an inchoate and unparticularized suspicion or hunch." *Id.* A factor may contribute to reasonable suspicion even if it "is not by itself proof of any illegal conduct and is quite consistent with innocent travel." *United States v. Sokolow*, 490 U.S. 1, 9 (1989). Moreover, courts should "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious activities." *United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005) (quotations omitted).

Among other factors, the district court found that Mr. Ma was exhibiting signs of extreme nervousness, provided inconsistent answers about his travel plans, and was driving a rental vehicle rented by a person who was not in the vehicle. We have held that all of these factors may contribute to the formation of an objectively reasonable suspicion of illegal activity, particularly when considered together. *See, e.g.*, *United States v. Karam*, 496 F.3d 1157, 1164-65 (10th Cir. 2007) ("confusion about details is often an indication that a story is being fabricated on the spot, and vague and evasive answers may be considered, in conjunction with other factors, as contributing to an officer's determination of

-7-

reasonable suspicion") (quotations omitted); *Santos*, 403 F.3d at 1127, 1129 (unusual nervousness and implausible travel plans "may be considered as part of the totality of the circumstances a reasonable law enforcement officer would analyze in investigating possible crimes"); *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001) (officer "knew from his training and experience that drug couriers often use third-party rental cars"); *Hunnicutt*, 135 F.3d at 1349 ([a] "variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activit[ies,]" including "having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, and inconsistent statements about destination"); *United States v. McRae*, 81 F.3d 1528, 1535 (10th Cir. 1996) ("implausible or contradictory travel plans can contribute to a reasonable suspicion of illegal activity"). The court also based its determination of reasonable suspicion on Mr. Ma's rapid deceleration upon seeing Trooper Mrsny although he was already driving below the posted speed limit, the strong odor of dryer sheets or fabric softener, and the fact that Mr. Ma was traveling from a known source city to a known destination city. While some of these factors may often arise through innocent activity, we cannot say they failed to add weight to the district court's reasonableness determination in light of the other suspicious activities.

On appeal, "[o]ur task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious, but rather to determine

whether the totality of the circumstances justify the detention." *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997) (quotations and citations omitted). In so doing, we must "remember[] that reasonable suspicion represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (quotations and citations omitted). Under the totality of the circumstances, we conclude the district court correctly determined there was sufficient reasonable suspicion to detain Mr. Ma pending the arrival of the canine unit.[1] Consequently, the court properly denied the motion to suppress.

    **AFFIRMED**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge

---

[1] The actual length of time between the start of the traffic stop and the discovery of the marijuana – approximately forty-three minutes – was also reasonable. *See United States v. Villa-Chaparro*, 115 F.3d 797, 802-803 (10th Cir. 1997) (holding forty-three minute time lapse reasonable in view of the officer's reasonable suspicion).